IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2002-0037 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| MICHAEL EDWARD GARFIELD, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20011387

Honorable Howard Hantman, Judge

REVERSED AND REMANDED

---

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Kathryn A. Damstra                          Tucson
                                                                Attorneys for Appellee

Wanda K. Day                                                            Tucson
                                                            Attorney for Appellant

---

B R A M M E R, Presiding Judge.

¶1        After a jury trial, appellant Michael Edward Garfield was convicted of aggravated assault with a deadly weapon. On appeal, he argues that there was insufficient evidence to support his conviction and that the trial court erred in refusing to give one of his proposed jury

instructions. Because we agree with his latter argument, we reverse his conviction and remand the case for a new trial.

**Facts and Procedural History**

¶2 We view the facts and reasonable inferences therefrom in the light most favorable to upholding the verdict. *State v. Herrera*, 203 Ariz. 131, 51 P.3d 353 (App. 2002). On March 30, 2001, the victim, C., telephoned A. and asked if he could come to A.'s house. C. wanted to discuss an ongoing problem he was having with Frank Bastian, a mutual friend. Bastian's home had been burglarized a few weeks earlier, and he suspected C. had committed the offense. A. agreed to allow C. to come over and called Bastian to tell him C. would be at her house.

¶3 Garfield was already at A.'s house repairing a motorcycle, and A. asked him to remain while C. and Bastian were there because she feared "some sort of a fight or a brawl" might erupt and she did not want anyone to be injured or "anything in [her] house to get busted up." When C. arrived at A.'s house, Garfield was sitting on a couch near the door, and A. was in a back room. C. testified that, shortly after his arrival, he had heard a noise near the front door and had turned to see Bastian threatening him with a taser gun. Garfield then approached C. from behind and shot him in the face. The bullet passed through C.'s mouth and left through his cheek.

¶4 Garfield was indicted for attempted first-degree murder and aggravated assault with a deadly weapon or dangerous instrument. After the state rested its case, the trial court granted in part Garfield's motion for judgment of acquittal, made pursuant to Rule 20(a), Ariz.

2

R. Crim P., 17 A.R.S., apparently finding the state had presented insufficient evidence of premeditation to support the attempted first-degree murder charge. The court submitted the lesser-included charge of attempted second-degree murder to the jury. The jury subsequently found Garfield not guilty of attempted second-degree murder and guilty of aggravated assault with a deadly weapon or dangerous instrument. The court sentenced Garfield to an aggravated prison term of twenty years.

**Discussion**

Sufficiency of the Evidence

**¶5**         Garfield claims that the evidence was insufficient to support the jury's verdict.[1] He bases his argument on A.R.S. § 13-205(A), which provides that "a defendant shall prove any affirmative defense raised by a preponderance of the evidence." *See State v. Farley*, 199 Ariz. 542, ¶ 14, 19 P.3d 1258, 1261 (App. 2001) ("Justification is an affirmative defense."). Garfield asserts that his defenses were "that [he] was justified in shooting C[.] in defense of a third person [pursuant to A.R.S. § 13-406] . . . and in order to prevent a crime from occurring [pursuant to A.R.S. § 13-411]." He maintains that his conviction should be set aside because he proved his defenses by a preponderance of the evidence. The state responds that we should not address the argument because Garfield has inadequately developed it. We disagree but find no merit to the argument.

---

[1]Although we reverse Garfield's conviction and remand on other grounds, we address this argument because, if the evidence was insufficient to support the jury's guilty verdict, we would be required to vacate the conviction. *See Peak v. Acuna*, 203 Ariz. 83, 50 P.3d 833 (2002) (when appellate court reverses conviction for insufficient evidence, double jeopardy prevents retrial).

¶6         When reviewing a claim of insufficient evidence, we do not "reevaluat[e] the evidence to determine whether we would have convicted [the] defendant." *State v. Atwood*, 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992). We will not reverse a jury's verdict if it is supported by substantial evidence—evidence capable of convincing unprejudiced persons of the truth of a fact at issue. *Id*. If reasonable persons could differ on whether the evidence establishes a fact at issue, that evidence is substantial. *Id*. "We therefore review the record to determine whether . . . a rational trier of fact could have found the essential elements" of aggravated assault with a deadly weapon or dangerous instrument. *Id*. at 597, 832 P.2d at 614.

¶7         Section 13-1203(A), A.R.S., provides that, "[a] person commits assault by . . . [i]ntentionally, knowingly or recklessly causing any physical injury to another person; or . . . [i]ntentionally placing another person in reasonable apprehension of imminent physical injury; or . . . [k]nowingly touching another person with the intent to injure, insult or provoke such person." Section 13-1204(A)(2), A.R.S., provides that "[a] person commits aggravated assault if the person commits assault as defined in 13-1203 . . . [and] the person uses a deadly weapon or dangerous instrument."

¶8         The state presented ample evidence to support the jury's verdict. Garfield's argument appears to be founded almost entirely on testimony by A. and T., a witness to the shooting. As the state notes, Garfield does not directly challenge the other evidence. Rather, he cites testimony that C. had pointed a gun at Bastian to suggest that Garfield had proved his affirmative defenses. However, we also note that C. testified that he had not drawn a gun. Despite Garfield's sweeping assertion that "it is reasonable to believe that [C.] lied about not

4

having a gun," it was for the jury to evaluate C.'s credibility and the validity of his testimony. *See State v. Hall*, 204 Ariz. 442, 65 P.3d 90 (2003); *State v. Roberts*, 139 Ariz. 117, 677 P.2d 280 (App. 1983).

¶9 The state presented C.'s testimony and the testimony of responding police officers that Garfield had shot C. in the face, thereby causing him physical injury, and that Garfield had done so using a deadly weapon. *See, e.g., State v. Bell*, 113 Ariz. 279, 551 P.2d 548 (1976) (loaded gun is deadly weapon); *see also State v. Greenawalt*, 128 Ariz. 388, 626 P.2d 118 (1981) (defining offense of assault with deadly weapon). A rational jury, therefore, could have found that Garfield had committed aggravated assault with a deadly weapon. We will not reevaluate the conflicting evidence to determine the merits of Garfield's affirmative defense, a defense the jury rejected. *See Atwood.* That he presented evidence to support that defense does not render the contrary evidence insufficient to support his conviction.

Jury Instruction

¶10 Our inquiry is not ended, however, because Garfield requested a jury instruction based on § 13-411. That section provides in pertinent part:

> **A.** A person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other's commission of . . . second or first degree murder . . . or aggravated assault . . . .

In 1983, the legislature amended § 13-411 to add a "[d]eclaration of policy," the relevant portion of which states:

**A.** The legislature finds that homes of Arizona residents are being burglarized and violated at an alarming and unacceptable rate that is endangering the residents' safety, health and property, thereby depriving them of their safe and peaceful enjoyment of their homes.

**B.** It is the legislative intent to establish a policy by this law giving notice to all citizens, law enforcement personnel and the state courts that a person's home, its contents and the residents therein shall be totally respected and protected in Arizona, and that the law enforcement officials and courts shall apply this and all other applicable criminal laws relating to the protection of the home and its residents promptly and severely so as to restore the total sanctity of the home in Arizona.

1983 Ariz. Sess. Laws, ch. 255, § 1. The state opposed Garfield's request, arguing that the defense is only available to a resident attempting to prevent a crime in his or her home. Garfield responded that the defense is designed "to protect the sanctity of the home" and that, as a logical consequence, the defense it provides extends to a resident's guests. The trial court refused to give the instruction, adopting the state's argument and finding that the statute "doesn't apply to these facts."

¶11 Ordinarily, a defendant is entitled to any jury instruction reasonably supported by the evidence. *State v. Lucas*, 146 Ariz. 597, 708 P.2d 81 (1985). We review a trial court's refusal to give a proffered jury instruction for an abuse of discretion, *State v. Bolton*, 182 Ariz. 290, 896 P.2d 830 (1995), and will not reverse a trial court's refusal unless the defendant suffered prejudice as a result. *State v. Snodgrass*, 121 Ariz. 409, 590 P.2d 948 (App. 1979).

¶12 Garfield claims the trial court erred by not giving his requested instruction, arguing that the "facts . . . permit[ted] the inference that [he] acted under the reasonable apprehension that a crime was going to occur in [A.'s] home," presumably because Bastian

6

testified that C. had drawn a gun before Garfield shot him. Garfield further argues that "nothing in either the statute or the declaration [of policy] . . . mandates that [a defendant] must be a resident of the premises" to invoke § 13-411 and that A. had "imputed" her concern for the sanctity of her home to Garfield, who had remained there at her request to help prevent violence between C. and Bastian.

¶13        Cases that have interpreted § 13-411(A) have been inconsistent in determining its reach. *State v. Taylor*, 169 Ariz. 121, 817 P.2d 488 (1991) (resident need not wait until assailant enters home to use force against assailant); *State v. Korzep*, 165 Ariz. 490, 799 P.2d 831 (1990) (resident entitled to § 13-411 instruction when force used to prevent crime by coresident); *State v. Hussain*, 189 Ariz. 336, 942 P.2d 1168 (App. 1997) (person staying in motel room is resident of room and entitled to § 13-411 instruction); *State v. Thomason*, 162 Ariz. 363, 365, 783 P.2d 809, 811 (App. 1989) (statute "is applicable only to persons protecting the home, its contents, or the residents within," and defendant could not invoke defense because murder occurred on business premises). Garfield did not argue below nor does he argue on appeal that he was a resident of A.'s home.

¶14        In *Korzep*, the supreme court cautioned us from being overly restrictive when interpreting the legislative intent behind the passage of § 13-411. The court said:

> It would be a mistake for us to overemphasize the fact that the legislature was concerned with burglaries when it amended § 13-411 in 1983 to add subsection C. This is especially true because several of the crimes enumerated in subsection A, such as child molestation and sexual conduct with minors, frequently are committed by residents rather than by intruders.

7

> Finally, the broad language in the declaration of policy supports our conclusion that § 13-411 applies whether the criminal against whom force is used is a resident or a nonresident. Although the legislature was concerned about homes being burglarized and violated, it also expressed its intent to give "notice to *all citizens*" that "a person's home . . . *and the residents therein shall be totally respected and protected* in Arizona." Laws 1983, Ch. 255, § 1 (emphasis added). We believe the legislature's intent that residents be totally respected and protected can be realized only if residents may use force to prevent the commission of enumerated crimes by other residents as well as by intruders or invitees. Had the legislature intended § 13-411 to apply only when force is used to prevent the commission of crimes by nonresidents, it could easily have said so. *See Smith v. Superior Court*, 17 Ariz. App. 79, 82, 495 P.2d 519, 522 (1972).

*Korzep*, 165 Ariz. at 494, 799 P.2d at 835. The same non-restrictive rationale could apply to allowing a visitor, such as Garfield was here, to protect the sanctity of A.'s home.

¶15     The jury was presented evidence that Garfield had "reasonably believe[d] that physical force or deadly physical force [was] immediately necessary" to prevent C. from committing second-degree murder, first-degree murder, or aggravated assault. § 13-411(A). Accordingly, we conclude that the legislative purpose for the statute would permit a jury to find that Garfield had been attempting to protect the sanctity of A.'s home when he shot C. Although the jury apparently did not agree with Garfield's theory that, by shooting C., he had been defending a third person, *see* § 13-406, we cannot say beyond a reasonable doubt that it would not have agreed with his theory that he had been protecting the sanctity of A.'s home. Additionally, because § 13-411 presents a unique defense, we cannot say that the trial court's refusal to instruct the jury consistently with that section was harmless error merely because

8

the court had instructed the jury on § 13-406. *See Korzep.* Accordingly, we reverse Garfield's conviction and sentence and remand the case for a new trial.

**¶16**          Reversed and remanded.

_____
                        J. WILLIAM BRAMMER, JR., Presiding Judge

CONCURRING:


_____
M. JAN FLÓREZ, Judge


_____
JOSEPH W. HOWARD, Judge