OPINION
HALL, Judge.
¶ 1 Following a jury trial, Mayra Isabel Barraza was convicted of second-degree murder. Barraza claims that the trial court erred when it refused to instruct the jury on the “crime prevention” justification defense pursuant to Arizona Revised Statutes (A.R.S.) section 13-411 (2001). We conclude that § 13-411 may not be invoked by an invited guest who is charged with committing a crime against a resident of the home. Accordingly, we affirm the conviction.[1]
FACTS AND PROCEDURAL HISTORY
¶ 2 Gregorio Espinoza, the victim, was found dead at his home on May 5, 2001. He had been stabbed about sixty times with a single-edged, sharp instrument and had bled to death. Barraza’s name and address were written on a piece of paper in the victim’s vehicle, leading the police to her. Physical evidence also linked her to the scene.
¶ 3 Barraza initially denied that she had been with the victim or that she was involved in his death. Instead, she claimed she had been with one of her friends at the time in question. After the friend would not verify the purported alibi and revealed to the police that Barraza had asked her to lie, Barraza changed her story. She admitted that she had been with the victim as a guest at his home on May 5, 2001, and that she had stabbed him, but claimed she had acted to prevent the victim from sexually assaulting her.
¶ 4 The police also learned from other friends of Barraza that one week before, while she and two friends watched a television show about a woman who robbed men by stabbing them, Barraza commented that she would like to “suck on [some man’s] neck” and then “slice their throats and take their money.” Insisting that she was not joking but meant what she said, Barraza then pulled out a knife she was carrying in her purse.
¶ 5 Barraza was indicted on one count of first-degree murder. Following trial to a jury, she was found guilty of the lesser-included offense of second-degree murder and was sentenced to an aggravated term of twenty-two years. Barraza timely appeals to this court. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2003), 13-4031 and -4033 (2001).
DISCUSSION
¶ 6 Barraza asked the trial court to instruct the jury on the right to use force in crime prevention as outlined in § 13-411.[2] *434 The trial court denied the request, commenting “[s]ince the defendant was not defending her residence, 411 doesn’t apply.”
¶ 7 The trial court did agree that Barraza was entitled to an instruction on self-defense pursuant to A.R.S. §§ 13-404 and -405 (2001), and instructed the jury in relevant part as follows:
A defendant is justified in using or threatening physical force in self-defense if the following two conditions existed:
1. A reasonable person in the defendant’s situation would have believed that physical force was immediately necessary to protect against another’s use or attempted use of unlawful physical force; and,
2. The defendant used or threatened no more physical force than would have appeared necessary to a reasonable person in the defendant’s situation.
A defendant may use deadly physical force in self-defense only to protect against another’s use or apparent attempted or threatened use of deadly physical force.
However, the trial court denied defense counsel’s request to “clarify” the instruction by adding additional language stating “[f]orcible rape is deadly physical force.” The net effect of the trial court’s rulings was that the jury was not required to find that Barraza was acting in self-defense even if it believed that she was attempting to repel the victim’s sexual assault.[3] 3
¶ 8 We generally review a trial court’s denial of a requested jury instruction for an abuse of discretion, State v. Rosas-Hemandez, 202 Ariz. 212, 220, ¶ 31, 42 P.3d 1177, 1185 (App.2002), but review de novo whether the instructions given the jury properly state the law, State v. Orendain, 188 Ariz. 54, 56, 932 P.2d 1325, 1327 (1997).
¶ 9 Barraza contends that she stabbed the victim to prevent him from sexually assaulting her. Relying on her status as a guest in the victim’s home, Barraza claims she was entitled to have the jury instructed on the justification defense of “crime prevention” set forth in § 13-411.
¶ 10 Our primary goal in construing a statute is to determine and give effect to the intent of the legislature. State v. Korzep, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). To determine legislative intent, we consider the statute’s context, the language used, the subject matter, the historical background, the statute’s effects and consequences, and the statute’s spirit and purpose. Id. When the language of the statute is clear, we follow its direction without resorting to other methods of statutory interpretation. Bilke v. State, 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003). Statutes relating to the same subject or having the same general purpose, namely, statutes that are in pari materia, “should be read in connection with, or should be construed with other related statutes, as though they constituted one law.” State ex rel. Larson v. Farley, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). Additionally, we give words their usual and commonly understood meaning unless the legislature clearly intended a different meaning. Korzep, 165 Ariz. at 493, 799 P.2d at 834.
¶ 11 The scope of § 13-411 and its relationship to other justification statutes in Title 13, Chapter 4 has been a frequent topic on appeal. See, e.g., State v. Taylor, 169 Ariz. 121, 122, 817 P.2d 488, 489 (1991); Korzep, 165 Ariz. at 492, 799 P.2d at 833; State v. Garfield, 208 Ariz. 275, 277, ¶ 5, 92 P.3d 905, 907 (App.2004); State v. Hussain, 189 Ariz. 336, 337, 942 P.2d 1168, 1169 (App.1997); State v. Thomason, 162 Ariz. 363, 363, 783 P.2d 809, 809 (App.1989). In these and other cases, Arizona’s appellate courts have struggled with the tasks of construing § 13-411’s apparent broad scope in light of the more narrow “Declaration of policy” added by the Legislature in 1983[4] and reconciling § 13-411 with overlapping justification statutes.
*435 ¶ 12 For example, from the inception of the crime prevention statute in the 1978 Arizona Criminal Code revision, one of the enumerated offenses in § 13-411(A) has been aggravated assault committed pursuant to A.R.S. § 13-1204(A)(1) (“causing] serious physical injury”) or (2) (“us[ing] a deadly weapon or dangerous instrument”) (Supp.2003). Although § 13 — 405 and other justification defenses in Chapter 4 that also took effect in 1978 require an immediate threat to personal safety before a person may react by using deadly physical force, § 13-411 more percnissively allows a person to use deadly physical force to prevent a non-imminent aggravated assault. See Korzep, 165 Ariz. at 493, 799 P.2d at 834 (citing Thomason, 162 Ariz. at 365, 783 P.2d at 811). In effect, if applied literally, § 13—411 would subsume other less permissive justification statutes including § 13-405.
¶ 13 Thomason was the first opinion to address the tension between § 13 — 411 and other justification statutes. Thomason was charged with first-degree murder after he went onto a business competitor’s premises and shot the manager. Thomason, 162 Ariz. at 363, 783 P.2d at 809. At trial, he claimed that he was entitled to an instruction based on § 13-411 because he acted to prevent the victim and another employee from committing an aggravated assault on him. Id. at 364-65, 783 P.2d at 810-11. The trial court refused the request, instead instructing the jury pursuant to §§ 13-404 and —405. Id. at 365, 783 P.2d at 811. The jury convicted Thomason of second-degree murder. Id. at 363, 783 P.2d at 809. On appeal, Thomason contended that the trial court erred because the facts of his ease “fit within § 13 — 411.” Id. After explaining that § 13 — 411 seemingly “conflict[s]” and “overlap[s]” with other sections in Chapter 4, the court then harmonized the various justification statutes by relying on the legislative declaration of policy to limit the application of § 13 — 411 to cases coming within the policy statement:
Accordingly, we restrict the application of § 13-411 to eases which would come within that policy statement. That is, the defense is available only when a home, its contents, or the residents therein are being protected by the use or threatened use of physical force or deadly physical force against another. Such a restriction ameliorates the overlap and conflict of § 13-411 with the other justification statutes and furthers the legislative objective.
Id. at 366, 783 P.2d at 812. (Emphasis added.)
¶ 14 Subsequent cases construing § 13 — 411 have adhered to the construction established in Thomason regarding the limited scope of § 13-411 while interpreting it to fulfill the legislative intent that residents be totally protected and respected. In Korzep, for example, the supreme court held that the use of the word “another” in § 13—411(A) (“A person is justified in threatening or using both physical force and deadly physical force against another ....”) contemplates a situation in which a resident of a household uses force against another resident of the same household to prevent the commission of an enumerated crime. 165 Ariz. at 493-94, 799 P.2d at 834-35. One year later, in Taylor, the supreme court, while affirming that “[w]e continue to believe that ‘the justification defense in § 13—411 applies only when a home, its contents, or its residents are being protected by the use of force against another[.]” 169 Ariz. at 123, 817 P.2d at 490, held that a resident need not wait until an intruder physically enters the home before taking action to prevent the commission of enumerated crimes. “All that is required for § 13—411 to apply is that a reasonable relationship exist between the criminal acts being prevented and the home, its contents, or its *436 residents.” Id. Several years later, in Hus-sain, 189 Ariz. at 339, 942 P.2d at 1171, this court held that “an occupied motel or hotel room is the equivalent of a ‘home’ for the purposes of the justification defense provided by A.R.S. section 13-411.”
¶ 15 Recently, this court, eschewing an “overly restrictive” definition of “resident,” held that a person visiting a resident who shot another guest was entitled to have the jury instructed on crime prevention pursuant to § 13-411. Garfield, 208 Ariz. at 279, ¶¶ 14-15, 92 P.3d at 909. In this case, Barra-za seeks to expand the scope of § 13-411 beyond the facts in Garfield to encompass her assault on the resident of the home on the theory that she was preventing a sexual assault pursuant to A.R.S. § 13-1406 (2001), which is one of the enumerated crimes in the statute.
¶ 16 We decline to do so. Unlike Garfield, in which there was evidence that Garfield had remained at the home at the request of the resident to help prevent any violence between the victim and a third person, id. at 279, ¶ 14, 92 P.3d at 909, and was therefore acting on behalf of the resident, Barraza cannot plausibly claim that she was acting to protect the “total sanctity of the [victim’s] home.” See Declaration of policy, 1983 Ariz. Sess. Laws, ch. 255, § 1.
¶ 17 Indeed, extending the more permissive § 13-411 in the manner urged by Barraza to permit a nonresident to attack a resident in his own home would result in a resident having less legal protection in his home than in public, an outcome that would frustrate rather than further the clearly expressed legislative intent that § 13 — 411 be applied so “that a person’s home, its contents and the residents therein” are “totally respected and protected in Arizona.” See Thomason, 162 Ariz. at 366, 783 P.2d at 812 (statutes should be construed “in light of their purpose”). Accordingly, we reject Bar-raza’s claim that the jury should have been instructed pursuant to § 13-411.[5]
¶ 18 We now turn to Barraza’s other contention, that the instruction on self-defense based on §§ 13-404 and -405 was incorrect or insufficient. The State points out that Barraza’s argument on appeal — that the instruction violated State v. Grannis, 183 Ariz. 52, 900 P.2d 1 (1995) — is not the argument Barraza made to the trial court that additional language should have been inserted telling the jury that “forcible rape is deadly physical force.” Therefore, the State argues that Barraza has both abandoned the argument she made in the trial court, see State v. Nirschel, 155 Ariz. 206, 208, 745 P.2d 953, 955 (1987) (failure to provide argument on appeal constitutes abandonment and waiver of that issue), and waived her Grannis argument on appeal because she failed to make it in the trial court. See State v. Goldston, 126 Ariz. 171, 173, 613 P.2d 835, 837 (App.1980) (defendant waived right to object to instruction on certain ground when he objected to the instruction on a different ground in trial court).
¶ 19 We agree with the State that the only argument Barraza raises on appeal regarding the insufficiency of the jury instruction is based on Grannis. In Grannis, 183 Ariz. at 61, 900 P.2d at 10, the trial court had instructed the jury that “[a] defendant may only use deadly physical force in self-defense to protect himself from another’s use or attempted use of deadly physical force.” On appeal, the supreme court found that the instruction misstated the law because it may have led the jury to believe that deadly force could be used only to protect against “actual deadly force” even though *437 §§ 13-404 and -405 also allow deadly force to protect against “reasonably apparent deadly force.” Id. In comparison, the jury in this case was instructed that “[a] defendant may use deadly physical force in self-defense only to protect against another’s use or apparent attempted or threatened use of deadly physical force.” (Emphasis added.) Trial counsel, not surprisingly, did not raise a Grannis objection to this instruction. Therefore, we review only for fundamental error. See State v. Bolton, 182 Ariz. 290, 297, 896 P.2d 830, 837 (1995) (an issue not raised with the trial court is waived absent fundamental error). Fundamental error is error that goes to the foundation of a case or takes from the defendant a right essential to his defense. See State v. King, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988). This portion of the instruction complied with Grannis and did not constitute error, fundamental or otherwise.
¶ 20 Trial counsel did, however, specifically request that the jury be instructed in the context of the self-defense instruction that “[forcible rape is deadly physical force.” Appellate counsel, however, does not argue that the trial court’s denial of this request was error. Instead, he simply makes general references to trial counsel’s request that “the court [ ] instruct the jury that [Barraza] could use deadly physical force under the circumstances of the case” and cites portions of the trial transcript. The remainder of that section of the brief is then devoted exclusively to Barraza’s Grannis argument. Under similar circumstances, we have previously stated that “[w]e disapprove of the method ... of incorporating arguments at trial by reference in the brief on appeal____” State v. Rodgers, 134 Ariz. 296, 302, 655 P.2d 1348, 1354 (App.1982). See Ariz. R.Crim. P. 31.13(c)(1)(vi) (argument on appeal “shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on”). Therefore, we agree with the State that Barraza has abandoned this issue on appeal. See Nirschel, 155 Ariz. at 208, 745 P.2d at 955.
¶ 21 We may nonetheless reverse for fundamental error not presented by way of appeal that is “clearly apparent” from our review of the record. State v. Stroud, 207 Ariz. 476, 478, ¶ 5, 88 P.3d 190, 192 (App.2004); State v. Taylor, 187 Ariz. 567, 571-72, 931 P.2d 1077, 1081-82 (App.1996) (repeal of A.R.S. § 13-4035 does not require appellate courts “to ignore obvious fundamental error in a criminal proceeding”); see also State v. Mann, 188 Ariz. 220, 232 n. 1, 934 P.2d 784, 796 n. 1 (1997) (Martone, J., concurring) (“[I]f in the process of examining issues presented by way of appeal we stumble across fundamental error, then we have the discretion to address it.”). Here, the trial court’s self-defense instruction was an otherwise correct instruction pursuant to §§ 13-404 and - 405 and its refusal to instruct the jury that a sexual assault constitutes the per se use of “deadly physical force”[6] did not deprive Barraza of a fair trial. See People v. Heflin, 434 Mich. 482, 456 N.W.2d 10, 22-24 (1990) (finding no manifest injustice when trial judge did not specifically inform the jury that the defendant may use deadly force to resist a potential forcible rape, noting that under Michigan’s statutory scheme “forcible criminal sexual conduct may arise from circumstances in which the victim never had an honest and reasonable belief that his life is in imminent danger or threat of serious bodily harm”).[7] Accordingly, we decline to address this issue.
CONCLUSION
¶ 22 We affirm Barraza’s conviction.
CONCURRING: DONN KESSLER, Judge.

. In a separate Memorandum Decision filed concurrently with this Opinion, see Ariz. R.Crim. P. 31.26, we vacate Barraza’s aggravated sentence pursuant to Blakely v. Washington,-U.S.-, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and remand for resentencing.

. Section 13-411 provides in pertinent part:
A. A person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other’s commission of ... sexual assault under § 13-1406____
B. There is no duty to retreat before threatening or using deadly physical force justified by subsection A of this section.
C. A person is presumed to be acting reasonably for the purposes of this section if he is acting to prevent the commission of any of the offenses listed in subsection A of this section.

. An instruction pursuant to § 13-411 would have been more favorable to Barraza than that given by the trial court because she would have been presumed to have been acting reasonably in stabbing the victim if she reasonably believed that deadly physical force was immediately necessary to prevent the victim from sexually assaulting her. See § 13-411(C). For an explanation of the legal effect of the presumption, see Korzep v. Superior Court (Ellsworth), 172 Ariz. 534, 838 P.2d 1295 (App.1991).

. The "Declaration of policy" provides in relevant part:
*435 A. The legislature finds that homes of Arizona residents are being burglarized and violated at an alarming and unacceptable rate that is endangering the residents’ safety, health and property, thereby depriving them of their safe and peaceful enjoyment of their homes.
B. It is the legislative intent to establish a policy by this law giving notice to all citizens, law enforcement personnel and the state courts that a person's home, its contents and the residents therein shall be totally respected and protected in Arizona, and that the law enforcement officials and courts shall apply this and all other applicable criminal laws relating to the protection of the home and its residents promptly and severely so as to restore the total sanctity of the home in Arizona.
1983 Ariz. Sess. Laws, ch. 255, § 1.

. The declaration of policy is essentially a restatement of the legal maxim "A man’s home is his castle.” Under the so-called Castle Doctrine, “those who are unlawfully attacked in their homes have no duty to retreat, because their homes offer them the safety and security that retreat is intended to provide. They may lawfully stand ground instead and use deadly force if necessary to prevent imminent death or great bodily injury, or the commission of a forcible felony.” Catherine L. Carpenter, Of the Enemy Within, the Castle Doctrine, and Self-Defense, 86 Marq. L.Rev. 653, 656-57 (2003) (citations omitted). The dissent would erase any differentiation whatsoever between resident and guest by extending the reach of § 13-411 to a nonresident acting against the resident, in effect promulgating a new maxim that "A man’s home is his guest’s castle.” Such an expansive interpretation of § 13-411 is contrary to the legislative direction that the statute be interpreted to protect the sanctity of residents in their homes.

. "Deadly physical force” is "force which is used with the purpose of causing death or serious physical injury or in the manner of its use or intended use is capable of creating a substantial risk of causing death or serious physical injury.” A.R.S. § 13-105(12) (2001).

. The dissent states, infra ¶ 41, "[a]ccording to the state, there was no conduct by the victim that constituted deadly physical force and consequently provoked the use of deadly physical force by defendant.” Although accurate, this statement is somewhat imprecise. Viewed in context, the State was asserting that the evidence did not support Barraza’s claim that the victim attempted to sexually assault her, but that she was carrying out a preconceived plan to assault the victim.