*438 BARKER, Judge,
dissenting.
¶ 23 The purpose of the justification defense available under A.R.S. § 13-411 is “to restore the total sanctity of the home in Arizona.” State v. Taylor, 169 Ariz. 121, 123, 817 P.2d 488, 490 (1991) (quoting Ariz. Sess. Laws 1983, Ch. 255, § 1). The “total sanctity of the home in Arizona” is not provided if § 13-411 is construed to exclude from protection those who are guests within one’s home. This principle applies with even greater force here as the right at issue is the ability to defend oneself against a sexual assault. Accordingly, I respectfully dissent.
I.
A.
¶ 24 The point of departure for the construction of a statute is the language of the statute itself. Zamora v. Reinstein, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996) (stating that we “first consider the statute’s language”). The statute provides as follows:
A person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent ... sexual assault under section 13-1406.
A.R.S. § 13-411. There is no limiting language in this statute that would allow a homeowner or resident to utilize deadly physical force to protect herself against sexual assault but forbid an invited guest within the home from doing the same.
¶ 25 As the majority correctly points out, we have held that the “justification defense in § 13-411 applies only when a home, its contents, or its residents are being protected by the use of force against another.” Taylor, 169 Ariz. at 123, 817 P.2d at 490 (quotations and citations omitted). This is based upon the legislature’s “declaration of policy.” Id. In Taylor we made it clear that “[a]ll that is required for § 13-411 to apply is that a reasonable relationship exist between the criminal acts being prevented and the home, its contents, or its residents.” Id. (emphasis added). Certainly, an invited guest bears a “reasonable relationship” to a home’s “residents.” See id. If we construe the statute to protect a home’s “contents,” such as a couch or a chair, it would seem terribly misplaced to not allow protection of the invited guest who is sitting upon it. Did the legislature intend protection for property, but not for people, when providing for the “total sanctity of the home”?
¶ 26 The majority also claims that permitting invited guests to have the same protection under § 13-411 as the residents who invite them creates a situation in which a resident has less legal protection in his or her home than in public. This is not accurate. A resident has complete control over which persons to invite into his or her home. A resident has no such power in the public square. Thus, there is clearly greater power to protect oneself in one’s home than in public. Once a guest is invited, however, a resident cannot attack the guest and deny that guest the protection that § 13-411 affords.
¶ 27 The majority errs by creating an exception to § 13—411 that excludes invitees from the protection this statute provides.
B.
¶ 28 Our supreme court has instructed that “[i]n arriving at the Legislature’s intent, the effect and consequences of alternative constructions may be considered.” Dep’t of Revenue v. S. Union Gas Co., 119 Ariz. 512, 514, 582 P.2d 158, 160 (1978); see also Forino v. Ariz. Dep’t of Transp., 191 Ariz. 77, 80, 952 P.2d 315, 318 (App.1997) (same). The effect and consequence of the majority’s interpretation of § 13-411, excluding invitees but including homeowners (or other types of residents), is shown by the following example.
¶ 29 Your eighteen-year-old daughter Mary is invited to a party at her friend John’s home. Frank and George are also invited. At the party, Frank and George force John and Mary into a bedroom and sexually assault them. Under the majority’s analysis, John could use deadly force to protect himself against a sexual assault (if immediately necessary) but Mary could not. This is so, on the majority’s analysis, because John is a resident and Mary is an invitee. *439 Neither the language of § 13-411, nor the policy that underlies it, supports this inconsistent application of the statute to John and Mary. Inconsistent applications of statutes are to be avoided. Carter v. Indus. Comm’n, 182 Ariz. 128, 131, 893 P.2d 1291, 1294 (1995) (“[W]e seek to avoid inconsistency in the application of the statute.”); Welch-Doden v. Roberts, 202 Ariz. 201, 206, ¶ 22, 42 P.3d 1166, 1171 (App.2002) (“In construing statutes, we have a duty to interpret them in a way that promotes consistency, harmony, and function.”). Though the majority contends that defendant “cannot plausibly assert she is protecting the ‘total sanctity of the home,’ ” supra ¶ 16, this hypothetical makes plain that the invited guest is doing precisely what the resident is doing. Is protecting against a sexual assault taking place within the home, of someone invited to be in the home, not protecting the “total sanctity of the home”? The statute provides for no distinction between invitees and residents in this regard.
¶ 30 The majority, however, also bases the exception it creates not on the status of defendant as an invitee, but on the fact that she was defending herself against a resident. This basis is also misplaced. In the example above, assume that instead of Frank and George (the two other invitees) sexually assaulting John and Mary, that Frank, George and John (the resident) all sexually assaulted Mary. If an invitee may claim the protection of § 13-411, but just not against a resident, then Mary may use deadly force against Frank and George, but not against John even though all three of them are perpetrating the same sexual assault against her. Again, this is an illogical effect and consequence of the majority’s interpretation that is not supported by the statute or the pertinent cases.
¶ 31 The majority invokes the phrase that “A man’s home is his castle” and argues that providing protection for invited guests against residents would turn the phrase into a “A man’s home is his guest’s castle.” Supra ¶ 17 n. 5. This rationale forgets that we are dealing here with an invited guest, not an intruder. A man simply cannot invite a woman into his home, sexually assault her, and expect that the woman will not be able to invoke the same protections within that home that he would be entitled to invoke. This turns a “castle” into a fortress for abuse. Such a result is directly contrary to the plain language of the statute.
¶ 32 When dealing with invited guests (as opposed to intruders) the concept embodied in the statute is better captured by the phrase “Mi casa es su casa.”[8] No resident is entitled to deprive a guest of the protections to which he or she is entitled because the offense which makes self defense necessary is being perpetrated by a resident as opposed to an intruder. See State v. Korzep, 165 Ariz. 490, 494, 799 P.2d 831, 835 (1990) (Korzep I) (providing for protection on behalf of one resident against another resident and holding that “ ‘another’... as used in § 13-411, means a different or distinct person, and includes a resident of the same household as well as an intruder or invitee.”)[9] (emphasis added).
¶ 33 Thus, the “effect and consequences” of the majority’s construction, S. Union Gas Co., 119 Ariz. at 514, 582 P.2d at 160, also compels the conclusion that the construction they provide is in error. Construing the statute to provide protection to invited guests, even if the offense requiring protection is perpetrated by a resident, is the only interpretation that avoids inconsistent and illogical effects and consequences.
C.
¶ 34 Another consideration in applying § 13-411 in this case is specific to the crime *440 of sexual assault itself. Sexual assault, as defined under A.R.S. § 13-1406(A), is committed by “intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person.” In enacting the justification defense in § 13-411 the legislature provided for the use of both physical force and deadly physical force if “immediately necessary to prevent” such an assault. Without the provision for deadly physical force if “immediately necessary to prevent” such an assault, one could not utilize deadly physical force to stop a perpetrator from sexually assaulting him or her unless the perpetrator also used deadly physical force to bring about the sexual assault. Even though many sexual assaults may be accompanied by deadly threats, this does not satisfy the legislative enactment that deadly physical force may be used in all such attacks if “immediately necessary to prevent” the attack.
¶ 35 We should construe a statute to uphold the legislative policy. Achen-Gardner, Inc. v. Superior Court, 173 Ariz. 48, 54, 839 P.2d 1093, 1099 (1992) (quoting Tracy v. Superior Court, 168 Ariz. 23, 31, 810 P.2d 1030, 1038 (1991) (‘We also construe a statute in a manner that ‘will best serve the legislature’s purposes, policies, and goals’ apparent from the whole body of relevant law.”)). In this case, the legislature has placed great value on being able to protect oneself against sexual assault. There are policy reasons that support such a decision. As one partial collection on the federal level indicates:
“[The incidence of] rape rose four times as fast as the total national crime rate over the past 10 years.” S.Rep. No. 101-545, at 30 (citing Federal Bureau of Investigation Uniform Crime Reports (1988)).
“According to one study, close to half a million girls now in high school will be raped before they graduate.” S.Rep. No. 101-545, at 31 (citing R. Warshaw, I Never Called it Rape 117 (1988)).
“[One hundred twenty-five thousand] college women can expect to be raped during this — or any — year.” S.Rep. No. 101-545, at 43 (citing testimony of Dr. Mary Koss before the Senate Judiciary Committee, Aug. 29, 1990).
“[T]hree-quarters of women never go to the movies alone after dark because of the fear of rape and nearly 50 percent do not use public transit alone after dark for the same reason.” S.Rep. No. 102-197, p. 38 (1991) (citing M. Gordon & S. Riger, The Female Fear 15 (1989)).
United States v. Morrison, 529 U.S. 598, 633, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (Souter, J., dissenting) (alterations in original). Because of the dramatic personal and societal consequences of sexual assaults, the court should protect the right the legislature granted to those who choose to defend themselves against such an attack by the use of deadly physical force, if “immediately necessary to prevent” the attack. A.R.S. § 13-411.
¶ 36 The statutory policy to protect against sexual assaults is yet another reason to construe § 13-411 to protect a sexual assault victim who is a guest in a home. For this reason, and the other reasons above, it was error for the trial court to decline the § 13-411 instruction based on the legal theory that § 13-411 does not apply to invited guests in a home. The majority likewise errs in approving this failure to so instruct.
II.
A.
¶ 37 Jury instructions should be given if there is any evidence to support the instruction. E.g., State v. Bolton, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995) (“A party is entitled to an instruction on any theory of the case reasonably supported by the evidence.”); State v. Shumway, 137 Ariz. 585, 588, 672 P.2d 929, 932 (1983) (same).
¶ 38 In this case, the jury heard evidence that defendant had been invited into the victim’s home and that she stabbed the victim to defend herself from the victim’s sexual assault upon her. According to defendant,[10] the victim picked her up for a date and they *441 went to his house first for him to shower and change clothes. While there, the alleged sexual assault took place. According to her, she fought him off with a knife. Thus, it is clear that there was evidence to support the giving of an instruction based on § 13-411. It was error to refuse defendant’s offered instruction.
B.
¶ 39 The next question is whether the error was harmless. Defendant, after all, stabbed her alleged assailant multiple times and made a prior incriminating statement. An “[e]rror is harmless if we can conclude beyond a reasonable doubt that it did not influence the verdict.” State v. Johnson, 205 Ariz. 413, 421, ¶ 27, 72 P.3d 343, 351 (App.2003) (quoting State v. McKeon, 201 Ariz. 571, 573, ¶ 9, 38 P.3d 1236, 1238 (App.2002)). For the reasons below, I cannot so conclude in this case.
¶ 40 The failure to give the requested instruction provided the jury with the means of completely disregarding all of the self-defense evidence. This was defendant’s entire ease. In addition to defendant’s statement that she stabbed and kept stabbing the victim because he was sexually assaulting her, the following evidence supported her case: the money that was urged as a motive for killing was not taken; the medical examiner testified that the stab wounds were consistent with being inflicted from the position of one who had a person on top of her (as in a sexual assault); the age of defendant (seventeen) and the nature of the alleged assault (a rape) in relation to her failure to report it to police; the forced sexual assault by defendant of another woman within several months of this incident; and the fact that the victim was under the influence of alcohol and there was testimony that he became violent when under the influence of alcohol.
¶ 41 In this case the trial judge instructed the jury that “[a] defendant may use deadly physical force in self-defense only to protect against another’s use or apparent attempted or threatened use of deadly physical force.” (Emphasis added.) According to the state, there was no conduct by the victim that constituted deadly physical force and consequently provoked the use of deadly physical force by defendant.[11] Thus, the instruction given to the jury would not permit them to consider defendant’s self-defense evidence under this scenario. The trial judge also refused to instruct, under § 13-411, that “deadly physical force” could be used if “immediately necessary to prevent” a sexual assault. This instruction would have allowed the jury to consider the self-defense evidence even if the jury considered that the victim did not use deadly physical force on defendant.
¶ 42 Because (1) the flawed jury instruction gave the jury the means of completely disregarding all evidence in defense of her conduct, and (2) there was evidence in addition to her statements alone that supported her defense based on protecting herself against a sexual assault, I cannot say beyond a reasonable doubt that the failure to properly instruct on deadly physical force did not influence the jury’s verdict. The error was not harmless.
¶ 43 Additionally, in the face of clear legal error on the key point in the case, we should err on the side of allowing a jury to consider the evidence under the appropriate legal *442 standard. This is particularly so, as in this case, when the right not advised of goes to the important societal and individual interest in allowing a person to protect oneself, by deadly physical force if immediately necessary, from a sexual assault. The jury should be able to consider defendant’s conduct in light of that law.
III.
¶ 44 The majority’s exclusion of invitees from protection under § 13-411 is contrary to the plain language of the statute and the purposes of the policy that underlie it. For the reasons above, I respectfully dissent.

. ' 'My home is your home. ’ ’

. The majority points to State v. Garfield, 208 Ariz. 275, 92 P.3d 905 (App.2004) and distinguishes it from this case. Supra ¶¶ 15-16. Garfield is distinguishable on the facts. Garfield did not deal with a resident allegedly attacking an invitee, which is present here. The same principle in Garfield, however, is applicable here. The holding in Garfield provided for an invitee to come within § 13-411. The Garfield court recognized the Arizona Supreme Court admonition "caution[ing] us from being overly restrictive when interpreting the legislative intent behind the passage of § 13-411.” Id. at 279, ¶ 14, 92 P.3d at 909 (citing Korzep I). Respectfully, the majority’s (and the trial court’s) interpretation is just such an "overly restrictive” interpretation.

. Defendant did not testify at trial. A videotape of defendant’s statements to the police was played for the jury.

. The majority takes issue with this statement as being "accurate” yet "somewhat imprecise.” Supra n. 7. It is hard to see the imprecision. The state made it abundantly clear in closing argument that under its view of the evidence "[defendant] was not attacked. [Defendant] is not a poor attack victim, the victim of this monster.” Certainly, under this view, there is no argument that defendant was defending herself against the use of deadly physical force (or a sexual assault) by the alleged victim and thus entitled to invoke self-defense on the basis of the instruction given.
The problem, however, with basing an instruction on only one party’s view of the evidence is that the law requires an instruction to be given "on any theory of the case reasonably supported by the evidence.” Bolton, 182 Ariz. at 309, 896 P.2d at 849 (citation omitted) (emphasis added). Here, there was clearly evidence of a sexual assault. Supra ¶ 40. Defendant's case was premised on defending herself against an alleged sexual assault. To limit the victim of an alleged sexual assault to a defense based solely on deadly physical force, as contrasted with the sexual assault itself, guts the provisions of § 13-411 that expressly specify sexual assault as a qualifying crime. The instruction pursuant to § 13-411 should have been given.