NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

v.

JUAN CASTILLO, *Appellant.*

No. 1 CA-CR 19-0224
FILED 9-3-2020

---

Appeal from the Superior Court in Maricopa County
No.  CR2015-005445-001
The Honorable George H. Foster, Jr., Judge, *Retired*

**AFFIRMED IN PART, VACATED IN PART,
REVERSED IN PART AND REMANDED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian B. Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

------

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge David B. Gass and Judge Michael J. Brown joined.

------

**P E R K I N S**, Judge:

¶1 Juan Castillo appeals his convictions and sentences for seven counts of sexual conduct with a minor and one count of molestation of a child. For the following reasons, we vacate Castillo's conviction and sentence on Count 8, reverse Counts 2 and 3, and remand for further proceedings. We affirm the remaining convictions and sentences.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Castillo and his wife, Melanie, lived together with Melanie's daughter, M.C., who is the victim in this case. Castillo began dating Melanie when M.C. was three or four years old, and the two married about four years later in 2008. Melanie and Castillo's relationship began to sour during the following years, and Melanie began considering divorce.

¶3 Castillo was in charge of monitoring M.C.'s social media activity. In 2014, Castillo and Melanie became concerned about M.C.'s indications on social media that she was engaging in self-harm. Melanie also noticed physical indications that M.C. had been cutting herself and immediately began considering counseling for M.C., though Castillo expressed reservations about doing so. M.C. began attending counseling but did not like the counselor she was seeing.

¶4 Melanie and Castillo also had concerns about M.C.'s "attitude" and suspected it had something to do with her friends at school. They began considering putting M.C. in a prep school, though M.C. wanted to stay with her friends in public school. M.C. was scheduled to take an admissions test for the prep school on January 10, 2015, but never did so.

¶5 On January 9, 2015, the day before the scheduled admissions test, M.C. revealed to a friend that Castillo had been sexually abusing her, and this was why she had been cutting herself. M.C.'s friend and her mother immediately visited Melanie and M.C. to discuss the conversation, and together they promptly contacted the police. Police arrived shortly after and began investigating the case.

¶6        M.C. disclosed some incidents in her initial interview with a detective and later disclosed additional acts to a forensic interviewer with Phoenix Children's Hospital. After her interview with police, M.C. agreed to a confrontation call with Castillo. During the call, M.C. told Castillo that she had "accidentally" told her friend "what's been . . . happening between you and me." Castillo responded, "I'm going to jail huh?" He told M.C. to "say it's a lie" and that "it didn't happen." Neither Castillo nor M.C. spoke about the specific allegations.

¶7        A grand jury indicted Castillo on seven counts of sexual conduct with a minor, class 2 felonies (Counts 1, 2, 4, 5, 6, 7, and 8), and one count of molestation of a child, a class 2 felony (Count 3). After a six-day jury trial, the jury convicted Castillo as charged. The trial court sentenced Castillo to the presumptive term of 20 years on each of the seven sexual conduct counts, each to run consecutively, and 17 years for Count 3, to run consecutively at the end of the other counts. Castillo timely appealed. This court has jurisdiction under Article 6, Section 9 of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1, 13-4031, and 13-4033.A.1.

## DISCUSSION

¶8        Castillo raises two issues on appeal. He argues: (1) no trial evidence supported a third act of oral sex as alleged in Count 8, and (2) the trial court erred by allowing inadmissible hearsay testimony through a detective relating to the allegations supporting Counts 2 and 3.

### I.        Sufficiency of Evidence

¶9        When reviewing the sufficiency of evidence to support a conviction, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011).

¶10        The State agrees with Castillo that no evidence supported the act alleged in Count 8 and concedes error. Our review of the record further confirms that there was no evidence presented at trial to support a third act of oral sex as alleged in Count 8. We therefore vacate Castillo's conviction and sentence on Count 8. *See State v. Garfield*, 208 Ariz. 275, 277, ¶ 5 n.1 (App. 2004).

## II.    Hearsay

¶11         Castillo argues the trial court erred in allowing inadmissible hearsay in portions of a detective's trial testimony about M.C.'s recollection of the timeframes for Counts 2 and 3.

¶12         At trial, M.C. could not recall the exact dates the acts underlying Counts 2 and 3 occurred. She testified that the act underlying Count 2 happened "in the middle of the year," when "it was starting to get hot but not really hot yet[.]" She did not specify what year she was referring to. Regarding Count 3, M.C. initially testified that she thought the underlying act occurred sometime in the Fall of her 8th-grade year, meaning October or November 2014. She then testified, however, that it happened sometime "before the Fall."

¶13         A detective spoke with M.C. in January 2015. At trial, the detective initially testified that he could not remember the timeframe M.C. gave him for the act underlying Count 2. But after refreshing his recollection with his police report, he testified—over Castillo's hearsay objection—that M.C. told him it happened in the middle of 2014, when it was "beginning to get hot outside."

¶14         As to Count 3, the State again asked the detective what timeframe M.C. gave him for the underlying incident. Castillo again objected on hearsay grounds, which the trial court overruled. Without referring to his police report, the detective testified that M.C. told him the act underlying Count 3 occurred in October or November of 2014.

¶15         Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible unless it falls within a recognized exception to the rule against hearsay. Ariz. R. Evid. 801(c), 802–804. The State contends the statements were admissible under the recorded recollection exception to the hearsay rule, or alternatively as prior consistent statements, which are not hearsay. The State also argues that any error was harmless. We review a ruling on the admissibility of hearsay evidence for an abuse of discretion. *State v. Giannotta*, 248 Ariz. 82, 83, ¶ 8 (App. 2019). Erroneous admission of hearsay evidence may be harmless. *See State v. Granados*, 235 Ariz. 321, 328, ¶ 30 (App. 2014).

### a.  Recorded Recollections

¶16         The State argues the statements were admissible as recorded recollections. We disagree. A recorded recollection is "[a] record that: (A) is on a matter that the witness once knew about but now cannot recall well

enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Ariz. R. Evid. 803(5).

¶17        The State points us to our recent holding that "a jointly constructed recorded recollection—e.g., one person makes an oral statement, another writes it down—may be admitted under this exception if each person involved in creating the record testified to performing his or her role accurately." *Giannotta*, 248 Ariz. at 83, ¶ 1. That case involved a stolen firearm. *See id.* at ¶ 4. The victim owner of the firearm testified that he could not remember its serial number at the time of trial, but that he had previously read it to a police officer who then wrote it down. *Id.* at 84, ¶ 12. The officer then testified that after the victim read him the serial number, he wrote it down; he then read the number into evidence from his written report. *Id.* at ¶ 13. We reasoned that "the requisite foundation for a jointly constructed recorded recollection . . . can be established by hearing from both (or all) individuals who participated in its creation, with each affirming the accuracy of his or her contribution." *Id.* at 85, ¶ 16.

¶18        But the holding in *Giannotta* is inapplicable to this case for one simple reason: the detective here never actually read any portion of his report into evidence. There was therefore no "record" admitted into evidence as allowed by the rule—only the detective's bare hearsay testimony as aided by his report.

¶19        The State conflates the fact that the detective used his police report to refresh his recollection—which has no bearing on the admissibility of hearsay evidence—with a proper use of the recorded recollection exception. A witness may be permitted to use a writing to refresh his or her recollection while testifying. *See* Ariz. R. Evid. 612; *State v. Ortega*, 220 Ariz. 320, 330, ¶ 33 (App. 2008). But when a writing is used for this purpose, it is the witness's *testimony*, not the writing itself, that is admitted in evidence. Conversely, under the recorded recollection exception, a portion of the writing itself may be read into evidence. *See* Ariz. R. Evid. 803(5); *Ortega*, 220 Ariz. at 330, ¶ 33; *Giannotta*, 248 Ariz. at 84, ¶ 13. Thus, Rule 803(5) did not apply to the detective's use of his police report to refresh his recollection because he did not read the report aloud while testifying.

    b.    *Prior Consistent Statements*

¶20        The State argues in the alternative that the statements were admissible as prior consistent statements. A prior consistent statement is

not hearsay if the declarant testifies and is subject to cross-examination, and the statement is offered:

> (i)     To rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
>
> (ii)    To rehabilitate the declarant's credibility as a witness when attacked on another ground;
>
>      . . .

Ariz. R. Evid. 801(d)(1)(B). Inexplicably, the State cites subsection (ii) of the rule on appeal, which addresses attacks on credibility *other* than charges of fabrication described in subsection (i), but immediately thereafter notes that "Castillo had attacked [M.C.'s] credibility by claiming she fabricated the abuse and suggested that her lack of memory about the events and when they occurred demonstrated they were fabricated." And the record reflects the defense's trial strategy was indeed to imply that M.C. had fabricated the timeframes due to an ulterior motive. Thus, the State apparently concedes the statements would have only been admissible to rebut Castillo's charge that M.C. had "recently fabricated" the timeframes for Counts 1 and 2. *See* Ariz. R. Evid. 801(d)(1)(B)(i).

**¶21**      To rebut a charge of recent fabrication or improper motive, the statement must have been made "before the existence of facts that indicate a bias arises." *State v. Martin*, 135 Ariz. 552, 554 (1983). The trial court therefore needed to make a finding as to when the motive to fabricate began. *Id.* at 555. It made no such finding, nor did the court state clearly on the record which rule it applied in allowing the testimony. Any motive to fabricate would have presumably begun sometime before M.C.'s interview with police in January 2015, which is when the hearsay statements occurred. Therefore, the detective's testimony relaying the timeframes M.C. gave him for Counts 1 and 2 in his January 2015 interview were not admissible as prior consistent statements.

   *c.   Harmless Error*

**¶22**      Finally, the State contends that any error in allowing the hearsay testimony was harmless. Again, we disagree.

**¶23**      An error is harmless if it appears beyond a reasonable doubt that the error did not contribute to the verdict obtained. *State v. Morris*, 215 Ariz. 324, 335, ¶ 44 (2007). Here, Castillo argued that M.C. fabricated the

allegations. While it is true that the State was not required to prove the exact dates of the offenses, a key part of the defense's strategy was to cast doubt as to M.C.'s recollection of the incidents, including the relevant timeframes. As we previously noted, the State concedes on appeal that "Castillo had attacked [M.C.]'s credibility by claiming she fabricated the abuse and suggested that her lack of memory about the events when they occurred demonstrated they were fabricated."

¶24        The State did not offer substantial corroborating evidence in this case. *See State. v. Thompson*, 167 Ariz. 230, 235 (App. 1990). The State points us to M.C.'s confrontation call with Castillo. But Castillo's statements during the call were not a direct confession to the crimes charged because neither M.C. nor Castillo discussed the specific allegations. M.C.'s credibility as to whether she fabricated the claims was therefore a central issue. We cannot say, beyond a reasonable doubt, that the detective's testimony corroborating M.C.'s knowledge of the relevant timeframes did not contribute to the verdict.

## CONCLUSION

¶25        We vacate Castillo's conviction and sentence as to Count 8. We reverse his convictions and sentences on Counts 2 and 3 and remand for further proceedings. We affirm the remaining convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA

7