745 P.2d 953

**STATE of Arizona, Appellee,**

v.

**Peter John NIRSCHEL, Appellant.**

**No. 6599.**

Supreme Court of Arizona.

Nov. 5, 1987.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Rob-

ert S. Golden, Asst. Atty. Gen., for appellee.

Curtis & Cunningham by George H. Curtis, Phoenix, for appellant.

GORDON, Chief Justice.

Appellant Peter John Nirschel was convicted by a jury of one count of armed robbery. Having determined that Nirschel was on parole at the time when he committed the robbery, the trial court sentenced Nirschel under the enhancement provision of A.R.S. § 13–604.01(A)[1] to life imprisonment without the possibility of release for twenty-five years. Nirschel challenges his conviction on the grounds that his trial counsel was ineffective, that the jury should have decided his parole status, and that the trial court failed to specifically instruct the jury as to the standard of proof to be applied to an interrogatory attached to the verdict form under which he was convicted. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4035.

## FACTS

On September 17, 1984, Richard Werner was working as a night auditor at the Rodeway Inn in Tucson, Arizona. At approximately 1:00 a.m. a young man dressed in a faded blue warm-up suit entered the hotel lobby and approached the front desk where Werner was standing. When Werner asked if he could be of service, the man thrust a gun in Werner's face and demanded all the money under his control. At Nirschel's trial, Werner was unable to identify Nirschel as the man who robbed him, testifying, instead, that he purposely avoided looking at the robber in an effort not to antagonize him. The jury acquitted Nirschel of the armed robbery of the Rodeway Inn.

At a little past 1:00 a.m. a young man wearing a faded blue warm-up suit entered the lobby of the Tucson Quality Inn. Reed Bond, the night auditor, was standing in the lobby watching television. When Bond asked if he could help, the man pulled a gun and demanded all the money in the hotel's coffer. The description Bond gave to the police and at trial generally matched Nirschel, but Bond, like Werner, was unable to identify Nirschel as the perpetrator. The same jury acquitted Nirschel of the armed robbery of the Quality Inn.

Sometime after 2:00 a.m. Nirschel entered the lobby of the Tucson Hilton Inn. Wearing a blue sweatshirt and dungarees, Nirschel approached the front desk with gun in hand. When the night auditor, Dennis Boje, turned to confront him, Nirschel demanded that Boje turn over all the hotel's money. After collecting the money, Nirschel told Boje to give him "five minutes" and fled through the front doors. Boje immediately actuated the silent alarm and, remembering that deputy sheriff Mack Matlock was guarding movie equipment in the Hilton parking lot, ran out the side door and yelled that he had been robbed. Matlock spotted Nirschel fleeing the scene and gave chase. During the chase Matlock saw Nirschel drop a paper bag. After Matlock yelled he would shoot if Nirschel did not "freeze," Nirschel stopped running and was taken into custody.

When Tucson police arrived, Matlock and police officers retraced the chase route, finding a set of keys, a gun and a paper bag full of cash. They also located an apparently abandoned pickup truck. Looking through the truck window, Matlock saw a cap, in plain view, bulging with cash. The pickup was towed to the police station and searched pursuant to a search warrant. The truck was not titled to Nirschel and was never claimed.

Following a search of his person, Nirschel was apprised of his constitutional rights. He told officers that he understood his rights and that he refused to talk with police until his "personal money" was returned. Nevertheless, Nirschel voluntarily made several incriminating voluntary statements during the arrest and booking process.

Nirschel was charged with three separate counts of armed robbery, one for each

---

**1.** Renumbered to § 13–604.02(A) by Ariz.Sess. Laws, Ch. 364, § 5, effective May 16, 1985.

of the hotels robbed on September 17, 1984. At trial, Nirschel maintained his innocence as to each robbery, asserting that the police had arrested the wrong man. Unlike Werner and Bond, Boje was able to identify Nirschel as the man who robbed him. The jury convicted Nirschel of the armed robbery of the Hilton Inn.

## WAS NIRSCHEL DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL?

In his opening brief, Nirschel raises five issues calling into question the effectiveness of his trial counsel.[2] Nirschel asserts that his counsel was deficient in (1) failing to object to the introduction of hearsay testimony, (2) identifying Nirschel's wallet among the state's physical evidence, (3) deciding not to seek a motion to suppress a photographic identification, (4) deciding not to seek a motion to suppress items seized from the pickup truck, and (5) deciding not to seek a motion to suppress the pre-trial statements made by Nirschel. Nirschel maintains that each of these deficiencies violated his constitutional right to effective assistance of counsel.

■ At the outset, we decline to consider whether counsel's failure to object to the introduction of hearsay testimony or his identification of Nirschel's wallet constituted ineffective assistance of counsel. In Arizona, opening briefs must present significant arguments, supported by authority, which set forth an appellant's position on the issues raised. *See* Rule 31.-13c(1)(iv), Rules of Criminal Procedure, 17 A.R.S.; *State v. McCall,* 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984); *State v. Smith,* 125 Ariz. 412, 610 P.2d 46 (1980). Failure to argue a claim constitutes abandonment and waiver of that issue. *State v. McCall,* 139 Ariz. at 163, 677 P.2d at 936. Without providing argument,

Nirschel's brief lists his concerns with respect to counsel's failure to object to the hearsay and to counsel's identification of the wallet. These claims are therefore abandoned and waived.[3]

For Nirschel to prevail on his remaining claims, he must prove that: (i) counsel's actions fell below the objective standards of representation measured by prevailing professional norms, and (ii) counsel's deficient performance prejudiced the defense. *State v. Nash,* 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied, Nash v. Arizona,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). We believe that Nirschel has failed to prove that his counsel's actions fell below objective standards of representation as measured by prevailing professional norms. As such, we need not address the second prong of the inquiry. *State v. Salazar,* 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985).

■ It is well established in Arizona that disagreements in trial strategy will not support a claim of ineffective assistance of counsel, provided the challenged conduct has some reasoned basis. *State v. Gerlaugh,* 144 Ariz. 449, 455, 698 P.2d 694, 700 (1985); *State v. Prince,* 142 Ariz. 256, 260, 689 P.2d 515, 519 (1984). It is true that under the federal Constitution certain basic decisions transcend the label "trial strategy" and are exclusively the province of the accused: namely, the ultimate decisions on whether to plead guilty, whether to waive a jury trial, and whether to testify. *State v. Lee,* 142 Ariz. 210, 215, 689 P.2d 153, 158 (1984), *disapproved on other grounds, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Beyond these matters, most trial decisions are matters of trial strategy resting with counsel. *Id.* We find that the decision whether to seek a motion to suppress items of evidence is a matter of trial strategy. *See* I ABA STANDARDS FOR CRIMINAL JUS-

2. Unless otherwise indicated, the term "counsel" shall herein signify trial counsel.

3. Pursuant to A.R.S. § 13–4035, we have searched the record for fundamental error and reviewed Nirschel's claims in spite of his failure to argue them. With respect to the failure to object to the introduction of hearsay evidence, we found no fundamental error in the record. With respect to the wallet, we note that counsel was able to keep the wallet from the jury. In this instance, counsel's assistance was plainly effective.

TICE § 4–5.2, commentary at 4.67 (2d ed. Supp.1986); *cf. Hester v. United States,* 303 F.2d 47 (10th Cir.) (failure to voice objections at trial is matter of strategy), *cert. denied,* 371 U.S. 847, 83 S.Ct. 80, 9 L.Ed.2d 82 (1962). We, therefore, must review Nirschel's claims only to determine whether the challenged conduct had some reasoned basis. *See State v. Meeker,* 143 Ariz. 256, 260, 693 P.2d 911, 915 (1984).

■ The record before us is somewhat unusual, in that counsel's reasons for not seeking to suppress various items of evidence are clearly articulated. The prosecutor, wary of a potential ineffective assistance of counsel claim, offered for the record his understanding of why counsel refrained from filing motions to suppress evidence. The trial court asked Nischel's counsel if he wished to respond, and he did so in detail.

With respect to the items seized in the search of the truck, counsel stated:

Regarding a Fourth Amendment motion to suppress evidence I find no valid basis for that for the reason that, number one, the police obtained a search warrant for the vehicle in question; [and] number two, *State v. Schad* says, basically, that there is no standing with regard to a vehicle other than the defendant's own vehicle.[4]

With respect to the photographic identification, counsel stated:

Regarding *Dessureault,* it's true, there was a photo lineup shown.[5] However, I don't think that there is any meritorious reason to do a pretrial motion for the reason that there was [sic] six photographs, they are all white males with approximately the same coloring and things like that. Through the interviews I [conducted, I] don't see any comments before or after the lineup which would justify making the motion.

With respect to the statements made by Nirschel concerning the money found on his person, counsel stated:

In fact, one of the witnesses that we intend to call and some of the documents that we intend to introduce is [sic] to establish that that was in fact his money. He was disabled and he was receiving disability checks and that was indeed his money.

Finally, after objecting to the admission of a statement Nirschel made to a police officer without a voluntariness hearing, counsel stated:

I have requested a voluntariness hearing regarding an alleged statement, "Would I be stupid enough to stuff money in my pocket if I just robbed the Hilton?" ...
I found upon reading through the report and my interview that, in fact, it was disclosed and, in fact, I was aware of it and the circumstance was that it followed Miranda and, therefore, I don't want to request a voluntariness hearing because of that.

We believe that counsel's clearly articulated strategy was reasoned, and that his decisions did not fall below the objective standards of representation measured by prevailing professional norms. Based on the record below, we find no merit in Nirschel's claim that his right to effective assistance of counsel has been violated.

## SHOULD NIRSCHEL'S PAROLE STATUS HAVE BEEN DECIDED BY THE JURY?

Prior to sentencing, the trial court received testimony from Nirschel's parole of-

---

**4.** *State v. Schad,* 129 Ariz. 557, 633 P.2d 366 (1981), *cert. denied, Schad v. Arizona,* 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982) (defendants do not have standing to object to the warrantless search of stolen automobiles in their possession) (footnote by court).

**5.** *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951, *cert. denied,* 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1969) (whenever a proposed in-court identification is challenged on the basis that the pretrial identification was unduly suggestive, the trial judge must immediately hold a hearing in the absence of the jury to determine from clear and convincing evidence whether the pretrial identification was the product of unduly suggestive circumstances) (footnote by court).

ficer indicating that Nirschel was on parole at the time the armed robbery occurred. On the basis of this evidence, as well as Nirschel's own admission,[6] the court determined for sentencing purposes that Nirschel was, in fact, on parole when the crime for which he was convicted occurred. Pursuant to A.R.S. § 13–604.01(A),[7] the judge sentenced Nirschel to life imprisonment without the possibility of release for twenty-five years.

■ Nirschel argues that he was entitled to a trial by jury on the question of whether he was on parole at the time the armed robbery occurred. In so arguing, Nirschel asks this Court to once again review its decision in *State v. Turner*, 141 Ariz. 470, 687 P.2d 1225 (1984). In *Turner*, we held that a defendant's parole status was an aggravating factor, not used to determine guilt, but only to enhance the defendant's sentence once he was found guilty of the charged offense. *Id.* at 475–76, 687 P.2d at 1229–30. We then authorized trial courts to make findings of parole status. *Id.* at 476, 687 P.2d at 1230. We have reviewed and affirmed *Turner* on several occasions, *see State v. Hurley*, 154 Ariz. 124, 741 P.2d 257 (1987); *State v. Carter*, 145 Ariz. 101, 700 P.2d 488 (1985); *State v. Fuller*, 143 Ariz. 571, 694 P.2d 1185 (1985), and we do so again today. Accordingly, we reject Nirschel's claim that his parole status presented a jury question.

## DID THE TRIAL COURT ERR IN NOT SPECIFICALLY INSTRUCTING THE JURY ON THE STANDARD OF PROOF TO BE APPLIED TO THE INTERROGATORY ATTACHED TO THE VERDICT FORM?

■ Following closing arguments, the trial court read various instructions and verdict forms to the jury. Attached to the verdict form for count three[8] was an interrogatory asking the jury, if it found Nirschel guilty under the count, whether it also found that he used a gun during the course of the robbery. On its face, the interrogatory did not indicate that a finding concerning Nirschel's use of a gun had to be established beyond a reasonable doubt. Nirschel argues that the interrogatory permitted the jury to make such a finding without being aware of the burden of proof on the issue, and, as such, the interrogatory violated his right to a fair trial.

In reviewing Nirschel's claim, we note first that Nirschel failed to object to the interrogatory at trial. Therefore, the issue is waived on appeal absent fundamental error. *See State v. Cannon*, 148 Ariz. 72, 81, 713 P.2d 273, 282 (1985).

The trial court thoroughly instructed the jury on the state's burden of proof, and specifically instructed the jury that the state must establish every portion of its case beyond a reasonable doubt. Moreover, the court instructed the jury that it must decide each count separately and remain uninfluenced by its decision with re-

6. After the verdict was read and the jury excused, Nirschel asked the trial court to sentence him as soon as possible. Because he feared that it would delay sentencing, Nirschel informed the court that he wanted to waive any hearing on his parole status, and he readily admitted to being on parole when the robbery was committed.

7. A.R.S. § 13–604.01(A) provided:
[A] person convicted of any felony offense involving the use or exhibition of a deadly weapon or dangerous instrument or involving the intentional or knowing infliction of serious physical injury upon another if committed while the person is on probation for a conviction of a felony offense or parole, work furlough or any other release or escape from confinement for conviction of a felony offense shall be sentenced to life imprisonment and is not

eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis ... until the person has served not less than twenty-five years. Renumbered A.R.S. § 13–604.02(A). *See supra* note 1.

8. Count three charged Nirschel with armed robbery of the Hilton Inn and was the only count for which Nirschel was convicted. The interrogatory at issue read as follows:
If you find the defendant guilty of count three, then answer the following interrogatory:
Do you find that the offense involved the use or exhibition of a deadly weapon or dangerous instrument, to-wit: a gun?
____Yes
____No

spect to the other counts. These two instructions, given to the jury only moments before the interrogatory, adequately informed the jury that to affirmatively answer the interrogatory it had to be convinced beyond a reasonable doubt that the defendant exhibited a gun. Such being the case, we find no error.

We have searched the record for fundamental error according to the mandate of A.R.S. § 13–4035 and *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and have found none. Affirmed.

FELDMAN, V.C.J., and CAMERON, and HOLOHAN, JJ., concur.

NOTE: Justice JAMES MOELLER did not participate in the determination of this matter.