212 P.3d 11

**STATE of Arizona, Appellee,**

v.

**Shawn P. KARR, Appellant.**

**No. 1 CA–CR 07–0183.**

Court of Appeals of Arizona,
Division 1, Department E.

Dec. 18, 2008.

320

Terry Goddard, Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals Section/Capital Litigation Section and Katia Mehu, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Nicole T. Farnum, Tempe, Attorney for Appellant.

**OPINION**

OROZCO, Judge.

¶ 1 Shawn P. Karr (Defendant) appeals his conviction for first degree murder as well as the sentence imposed following his conviction for misconduct involving weapons. Defendant contends that the trial court erred when it: (1) failed to instruct the jury regarding the burden of proof for self-defense; (2) ordered that the sentence for misconduct involving weapons be served consecutively to the sentence imposed for murder; and (3) enhanced the sentence for misconduct involving weapons based on the existence of a

historical prior felony conviction. For the reasons that follow, we affirm Defendant's conviction for first degree murder and the imposition of the enhanced sentence for misconduct involving weapons. However, we vacate that portion of the sentencing minute entry ordering that the sentence for misconduct involving weapons be served consecutively and modify the sentence to be served concurrently with the sentence for murder.

**Factual and Procedural History**

¶ 2 "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene,* 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998). In our review of the record, we resolve any conflict in the evidence in favor of sustaining the verdict. *State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989). However, we do not weigh the evidence; that is the function of the jury. *Id.*

¶ 3 Defendant and two other accomplices, Timothy and Larry, planned to rob the victim, a known drug dealer, of his drugs and money. Defendant and Timothy were armed with handguns. They planned to secure the victim with duct tape and/or zip ties. When they arrived at the victim's apartment, Timothy, who knew the victim, knocked on the door and was allowed inside. Defendant entered the apartment shortly thereafter. Within minutes, there was an argument that escalated into what was described as a fight. When Larry entered the apartment, he observed Defendant holding a gun on the victim, who was crouched down before Defendant. Defendant leaned over the victim and as he did so, Defendant handed Larry a knife he had taken from the victim. After Defendant told Timothy and Larry he believed someone was in a back bedroom, Timothy and Larry moved in that direction.

¶ 4 For reasons which we need not detail, other than the testimony of Defendant, there was no eyewitness testimony regarding what happened next between the victim and Defendant.

¶ 5 Defendant testified that he never planned to rob the victim with Timothy or Larry. Defendant also testified he went to

Larry's residence on the date of the incident because he believed he may have left his identification card, cell phone and keys at Larry's residence or in a vehicle Larry and he used earlier that day. When Defendant arrived at Larry's, no one was there. Based on an earlier conversation Defendant had with Larry, he believed Larry and others had gone to the victim's apartment and that they may have used that same vehicle. Therefore, Defendant decided to go to the victim's apartment to see if he could locate the lost items in the car.

¶ 6 Defendant testified that he knew where the victim's apartment was because he had been there approximately two and a half months before. Defendant went to the victim's apartment and walked up the stairs. As he did, he saw that the front door was open. He knocked and stepped inside and saw Timothy and the victim discussing that Timothy owed the victim money for drugs. The victim and Timothy began to argue and became aggressive towards each other. Defendant testified that another person in the apartment, Tony, moved towards the victim, produced a handgun, ordered the victim to the ground and the victim dropped to his knees. Defendant testified that Tony swung the gun around towards Defendant. As he did so, the victim got up and ran into the kitchen. When Tony turned back toward where the victim had been, Defendant punched Tony repeatedly and caused him to drop the gun. Defendant testified he then grabbed the gun to keep it from Tony.

¶ 7 According to Defendant, the victim came out of the kitchen moments later with what was described variously at trial as a "cleaver" or a "knife." It is not clear from the record whether the "cleaver" eventually found under the victim was the "knife" described by Defendant and other witnesses. Regardless, Defendant testified that the victim looked at Tony, looked at Defendant, then swung the knife at Defendant. When Defendant ducked, the victim missed and struck the wall with the knife. A small cut in the wall of the apartment was determined to be consistent with the cleaver or knife found under the victim. Defendant ran toward the front door, still holding the gun. When he

heard a noise behind him, Defendant stopped and turned and saw the victim running at him and holding the knife in the air. Defendant fired twice at the victim from a distance of approximately four feet. Defendant testified that the victim dropped to his knees, still holding the knife. Defendant dropped the gun and Tony retrieved it. Defendant checked on the victim as he knelt on the floor, then ran from the apartment.

¶ 8 Defendant testified that he believed he had no choice but to shoot the victim in order to protect himself and he shot the victim in self-defense. Defendant believed that if he did not do so, the victim would have attacked him with the knife. Defendant said he did not warn the victim or otherwise say anything to him before he shot him because he did not have time to do so. The victim subsequently died of a gunshot wound to the chest.

¶ 9 The jury convicted Defendant of first degree murder, armed robbery, first degree burglary and misconduct involving weapons. He was sentenced to life imprisonment without a possibility of release for twenty-five years for first degree murder; a presumptive, concurrent term of 10.5 years' imprisonment for armed robbery; a presumptive, concurrent term of 10.5 years' imprisonment for first degree burglary; and a consecutive, presumptive term of 4.5 years' imprisonment for misconduct involving weapons. Defendant timely appealed. We have jurisdiction pursuant to Arizona Constitution Article VI, Section 9, and Arizona Revised Statutes (A.R.S.) §§ 12–120.21(A)(1), 13–4031 and –4033(A).

**The Self–Defense Instructions**

¶ 10 Defendant asserts that the trial court erred when it failed to instruct the jury regarding the burden of proof on self-defense. Defendant concedes that he neither requested the instruction nor objected to its omission. Therefore, we review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).

*A. Background*

¶ 11 At Defendant's request, the trial court instructed the jury regarding the justifica-

tion defenses of self-defense and the justified use of deadly physical force pursuant to A.R.S. §§ 13–404 and 13–405 (2001). However, Defendant did not request an instruction regarding the burden of proof on the justification defenses. At the time Defendant committed the offenses, A.R.S. § 13–205 provided that it was the defendant's burden to prove by a preponderance of the evidence any of the justification defenses found in Chapter 4 of the Criminal Code, which includes self-defense and the justified use of deadly physical force. A.R.S. § 13–205 (2001). However, before Defendant's trial, A.R.S. § 13–205 was amended to provide that the justification defenses in Chapter 4 are not affirmative defenses, and that the State has the burden to prove beyond a reasonable doubt that a defendant did not act with justification. A.R.S. § 13–205 (Supp.2008)[1]; see 2006 Ariz. Sess. Laws, ch. 199, § 2 (2nd Reg.Sess.).

¶ 12 Because the retroactivity of the amendment had not yet been addressed in any appellate decision, the court and counsel believed that it was the State's burden to prove beyond a reasonable doubt that Defendant did not act in self-defense. However, the court and counsel further believed that the standard jury instructions regarding the burden of proof were sufficient to instruct the jury that the State bore the burden of proof on self-defense as well. Shortly after Defendant's trial was completed, our supreme court held that the amendments to A.R.S. § 13–205 were not retroactive. *See Garcia v. Browning,* 214 Ariz. 250, 254, ¶ 20, 151 P.3d 533, 537 (2007). Therefore, at the time of Defendant's trial, Defendant bore the burden of proving by a preponderance of the evidence that he was legally justified in shooting and killing the victim.

### B.   Discussion

¶ 13 The trial court should have instructed the jury that Defendant bore the burden to prove his justification defenses by a preponderance of the evidence. Again, because Defendant neither requested an in-

struction on the burden of proof regarding self-defense nor objected to the failure to give such an instruction, we review for fundamental error. "Fundamental error is that which is 'clear, egregious, and curable only via a new trial.'" *State v. Hughes,* 193 Ariz. 72, 86, ¶ 62, 969 P.2d 1184, 1198 (1998)(quoting *State v. Gendron,* 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991)). "Fundamental error is error going to the foundation of the case, error that takes from defendant a right essential to his defense, and error of such magnitude that defendant could not possibly have received a fair trial." *Hughes,* 193 Ariz. at 86, ¶ 62, 969 P.2d at 1198 (internal quotations and citations omitted). However, even where fundamental error occurs, a defendant must still establish that he was prejudiced by the error in order to be entitled to relief. *Henderson,* 210 Ariz. at 568, ¶ 26, 115 P.3d at 608.

¶ 14 We first note that the State is incorrect in its assertion that Defendant was not entitled to an instruction on self-defense or justified use of deadly force at all under these circumstances. It is generally true that "[t]he privilege of self-defense is not available to one who is at fault in provoking an encounter or difficulty that results in a homicide." *State v. Lujan,* 136 Ariz. 102, 104, 664 P.2d 646, 648 (1983). However, if the jury chose to believe Defendant's version of events, it could have reasonably determined that he did not provoke the encounter. "A party is entitled to an instruction on any theory reasonably supported by the evidence." *State v. Rodriguez,* 192 Ariz. 58, 61, ¶ 16, 961 P.2d 1006, 1009 (1998). Defendant's theory that he acted in self-defense and that he was justified in the use of deadly physical force was reasonably supported by the evidence. Therefore, Defendant was entitled to an instruction on self-defense and the justified use of deadly physical force.

¶ 15 However, we find no fundamental error in the failure to instruct the jury regarding the burden of proof regarding self-defense and the justified use of deadly physical force. "The purpose of jury instruc-

---

1.   We cite the current version of the applicable statute because no revisions material to this decision have since occurred.

tions is to inform the jury of the applicable law in understandable terms." *State v. Noriega*, 187 Ariz. 282, 284, 928 P.2d 706, 708 (App.1996). A set of instructions need not be faultless. *Id.* However, the instructions must not mislead the jury. *Id.* As noted above, the trial court, the State and Defendant all believed that the State bore the burden of proof on the justification defenses. Furthermore, it was Defendant's burden to prove by a preponderance of the evidence that he acted in self-defense and that he was justified in the use of deadly physical force. Where an error is potentially confusing, but works in favor of the defendant to apply a lesser standard of proof, such an error does not require reversal. *State v. Sierra–Cervantes*, 201 Ariz. 459, 464, ¶ 29, 37 P.3d 432, 437 (App.2001). Further, the failure to give an instruction is not reversible error unless it is prejudicial to the rights of a defendant. *State v. Islas*, 132 Ariz. 590, 591, 647 P.2d 1188, 1189 (App.1992).

¶ 16 In this case the court should have instructed the jury regarding Defendant's burden to prove the justification defenses. However, Defendant was not prejudiced by the failure to do so. The instructions agreed to by the court and counsel and ultimately given to the jury shifted the burden regarding the justification defenses from Defendant to the State. Therefore, Defendant actually benefited from the omission. The jury was repeatedly instructed that the State bore the burden to prove Defendant guilty beyond a reasonable doubt. The jury was further instructed that the State had to prove each element of each offense beyond a reasonable doubt, that the State must prove guilt beyond a reasonable doubt with its own evidence, and that Defendant was not required to produce evidence of any kind. In closing argument, the State reiterated more than once that it had the burden to prove Defendant guilty of each offense beyond a reasonable doubt. The State went further and argued that it had the burden to rebut Defendant's testimony regarding the incident.[2] In our evaluation of the "jury instructions, we consider the instructions in the context of and in conjunction with the closing argu-

ments of counsel." *State v. Johnson*, 205 Ariz. 413, 417, ¶ 11, 72 P.3d 343, 347 (App. 2003). Therefore, the instructions given, coupled with the closing arguments of counsel, were sufficient to inform the jury that the State had to prove beyond a reasonable doubt that Defendant did not act in self-defense and/or that he was not justified in the use of deadly physical force. Regardless of whether this was proper under Arizona law, it was to Defendant's benefit and eliminated any possible prejudice from the failure to instruct the jury regarding the proper burden of proof on the justification defenses.

¶ 17 Defendant cites *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984), for the proposition that the failure to instruct the jury regarding the burden of proof on self-defense constitutes fundamental error even when the jury is correctly instructed regarding the State's general burden of proof. "An erroneous instruction regarding the State's burden *could* be fundamental error." *State v. Farley*, 199 Ariz. 542, 544, ¶ 8, 19 P.3d 1258, 1260 (App.2001)(emphasis added). At the time the offense addressed in *Hunter* was committed, the State bore the burden of proof beyond a reasonable doubt on all justification defenses. *Hunter*, 142 Ariz. at 89, 688 P.2d at 981 (1984). The jury in *Hunter* was instructed regarding the State's general burden of proof beyond a reasonable doubt. *Id.* However, the jury was also instructed, "If you decide the defendant's conduct was justified, you must find the defendant not guilty." *Id.* Our supreme court held that giving this *additional* instruction constituted fundamental error. *Id.* at 90, 688 P.2d at 982. The court held:

> [B]ecause the instructions provided that the state must prove all of its case against the defendant and must prove the defendant guilty beyond a reasonable doubt, and then several pages later provided that "[i]f you find the defendant's conduct justified, you must find the defendant not guilty," the jury might have approached the situation in one or more of three ways: it might have thought ... that the "beyond a rea-

---

2. Defendant noted to the trial court that he planned to address the State's purported burden

on the justification defenses in closing argument. However, he did not do so.

sonable doubt" instruction applied to all issues, including the self-defense issue. It might also have thought, however, that the self-defense instruction seemed to place on appellant the burden of proving self-defense and that therefore the specific instruction concerning self-defense was an exception to the general beyond-a-reasonable-doubt instruction. Or the jury might have thought that the beyond-a-reasonable-doubt instruction applied only to the state's "case against the defendant" and that the wording of the self-defense instruction indicated that the self-defense issue was simply not part of the state's case that the state had to prove.

*Id.* Therefore, the court in *Hunter* did not hold, as argued by Defendant, that the failure to instruct the jury regarding the burden of proof on justification defenses was fundamental error even if the jury was instructed regarding the State's general burden of proof. The court in *Hunter* held that it was fundamental error to give the additional instruction without further explanation and/or clarification once the standard instructions were given. No such additional instruction was given here, and the potential for jury confusion found in *Hunter* was not present in this case.[3]

¶ 18 For the reasons stated above, we find no fundamental error in the failure to instruct the jury regarding the burden of proof on the justification defenses.

## The Imposition of the Consecutive Sentence

¶ 19 As the second issue on appeal, Defendant asserts that the trial court erred when it ordered that the sentence for misconduct involving weapons be served consecutively to the sentence imposed for first de-

gree murder. Pursuant to *State v. Carreon*, 210 Ariz. 54, 75, ¶¶ 108–09, 107 P.3d 900, 921 (2005), the State correctly concedes error.

¶ 20 Pursuant to A.R.S. § 13–4037 (2001), we vacate that portion of the sentencing minute entry of February 23, 2007, which ordered that the sentence imposed for Count 5, misconduct involving weapons, be served consecutively to the sentences imposed for Counts 1, 2, and 3 in this matter and consecutively to the sentence imposed in CR 2005–014563–001 DT. We modify the sentence for misconduct involving weapons and order that it be served concurrently with those imposed in Counts 1, 2 and 3 in this case, as well as that imposed in CR 2005–014563–001 DT.

## Enhancement of the Sentence for Misconduct Involving Weapons

¶ 21 As the final issue on appeal, Defendant contends the trial court erred when it enhanced his sentence for misconduct involving weapons and imposed an enhanced presumptive sentence of 4.5 years' imprisonment, based on the existence of a historical prior felony conviction.[4] Defendant argues there was insufficient evidence that he had a "historical prior felony conviction" as defined by the statute in effect at the time the offense was committed, A.R.S. § 13–604(V)(2001).[5] While Defendant concedes that he did not object below, "an illegal sentence may be reversed on appeal despite the lack of an objection." *State v. Canion*, 199 Ariz. 227, 230, ¶ 10, 16 P.3d 788, 791 (App.2000).

¶ 22 A "historical prior felony conviction" is defined in relevant part as any class 2 or 3 felony committed within the ten years immediately preceding the date of the present offense, or any class 4, 5 or 6 felony committed within the five years immediately preced-

---

**3.** We acknowledge that in *State v. Valverde*, 539 Ariz. Adv. Rep. 5 (Sept. 16, 2008), this court on facts markedly similar to the instant case, found fundamental error in the trial court's failure to instruct on the burden of proof for self defense. In *Valverde*, the court relied on *Hunter* for a rule that failure to instruct the jury on the burden of proof for self defense is inherently fundamental error, much as Defendant argues here. Although acknowledging that "to prove fundamental error, a defendant must show ... that the error prejudiced him," the court in *Valverde* did not engage

in a separate analysis of whether that defendant was prejudiced by that error, as required by *Henderson*.

**4.** *See* A.R.S. § 13–604(A)(2001).

**5.** We look to the law that was in effect at the time a defendant committed the offense for which he was sentenced. *State v. Newton*, 200 Ariz. 1, 2, ¶ 3, 21 P.3d 387, 388 (2001).

ing the date of the present offense. A.R.S. §§ 13–604(V)(1)(b) and (c) (2001).[6]

¶ 23 Defendant testified at trial that he had a prior felony conviction, that he was on probation on the date of the incident and that he had been on probation about two years. Defendant confirmed his date of birth as February 23, 1980. The probation file contained the minute entry reflecting Defendant's prior conviction on April 16, 2001, and the imposition of probation, as well as a photograph of Defendant. When the probation officer was questioned during trial, she confirmed that the photograph in the probation file included the birth date that Defendant had previously identified. The probation officer also identified Defendant as the person in the photograph from the probation file. The record included a certified copy of Defendant's fingerprints and his picture introduced at trial from his prior conviction. A latent print examiner from the City of Phoenix Police Department compared the following exhibits admitted into evidence: (1) fingerprints taken at the time of Defendant's arrest; (2) fingerprints taken near the start of Defendant's trial; and (3) fingerprints taken in connection with the prior felony arrest of Defendant. The examiner concluded that the fingerprints were made by the same individual.

¶ 24 Given Defendant's own testimony about his prior felony conviction less than five years prior to the current offense and the latent print examiner's identification matching Defendant's fingerprints, we find sufficient evidence was introduced at trial to conclude that Defendant had a historical prior felony conviction. The trial court did not err when it imposed an enhanced sentence for misconduct involving weapons pursuant to A.R.S. § 13–604(A)(2001).

## Conclusion

¶ 25 For the reasons stated above, we affirm Defendant's conviction for first degree murder and the imposition of the enhanced sentence for misconduct involving weapons. We vacate that portion of the sentencing minute entry of February 23, 2007 which ordered that the sentence imposed for Count 5, misconduct involving weapons, be served consecutively to the sentences imposed for Counts 1, 2, and 3 in this matter and consecutively to the sentence imposed in CR 2005–014563–001 DT. We modify the sentence for misconduct involving weapons and order that it be served concurrently with those imposed in Counts 1, 2 and 3 in this case, as well as that imposed in CR 2005–014563–001 DT. We otherwise affirm the remainder of Defendant's convictions and sentences.

CONCURRING: JON W. THOMPSON, Presiding Judge, and ANN A. SCOTT TIMMER, Judge.

---

6. Now codified at A.R.S. § 13–604(W)(3)(b) and (c). 15