316 P.3d 615

**STATE of Arizona, Appellee,**

v.

**Stanson Kee JOE, Appellant.**

**No. 1 CA–CR 12–0730.**

Court of Appeals of Arizona, Division 1.

Jan. 21, 2014.

---

Arizona Attorney General's Office, By Joseph T. Maziarz, Phoenix, Counsel for Appellee.

Emery K. LaBarge, Snowflake, Counsel for Defendant/Appellant.

Judge SAMUEL A. THUMMA delivered the decision of the Court, in which Presiding Judge RANDALL M. HOWE and Judge PATRICIA A. OROZCO joined.

## OPINION

THUMMA, Judge.

¶ 1 Defendant Stanson Kee Joe appeals from his convictions and resulting sentences for kidnapping, aggravated assault and nine counts of sexual assault. Joe contends the superior court abused its discretion in admitting pretrial statements made by the victim as prior inconsistent statements. Finding no abuse of discretion, Joe's convictions and the resulting sentences are affirmed.

## FACTS [1] AND PROCEDURAL HISTORY

¶ 2 In December 2009, Joe came to the victim's home while intoxicated looking for the victim's mother, whom he was dating. The victim (who was then 17 years old) and her sister answered the door and told Joe to leave. Eventually, the victim and her sister pushed Joe out of the house and locked the door.

¶ 3 A short time later, the victim left to walk to a friend's home. As she was walking, Joe approached the victim, hit her in the face and fractured her nose. Joe then pulled the victim by her hair toward a dumpster in a nearby alley. The victim screamed, but quieted when Joe threatened to kill her. Joe then repeatedly sexually assaulted the victim anally and vaginally using his fingers and penis. Joe also choked her and bit her chin, neck and arm.

¶ 4 A Holbrook Police Officer responded to a report of a woman screaming and found the victim lying in the alley near Joe. The victim immediately starting running toward the officer, crying, with blood on her face and clothing. The officer took Joe into custody.

¶ 5 The victim received medical care for numerous injuries. Along with a broken nose, she had genital and anal bleeding and tearing consistent with non-consensual vaginal and anal intercourse; Joe's DNA was located on a bite mark on her arm; DNA consistent with Joe's DNA was found on a vaginal swab and the victim's DNA was found on Joe's underwear. The night of the assault, the victim provided a detailed statement to Detective Sutton during a two-hour interview.

¶ 6 Joe was charged with one count of kidnapping, one count of aggravated assault and ten counts of sexual assault. Given various procedural matters, trial did not occur until July 2012, nearly three years after the assault.

¶ 7 At trial, when asked during direct examination by the State about the assault, the victim responded on several occasions: "I don't remember." In response, the State asked: "You don't remember or you would rather not say?" Each time the victim answered: "I would rather not say." The victim added that it was difficult to testify, stating she "tried forgetting" the assault but it was "hard to get over it."

¶ 8 In her testimony, the victim admitted giving a detailed statement to Detective Sutton the night of the assault. When the State started to reference her statements to Detective Sutton, Joe objected on Confrontation Clause and hearsay grounds. Based on the

---

1. On appeal, this court views the evidence in the light most favorable to sustaining the conviction and resolves all reasonable inferences against Joe. *State v. Karr,* 221 Ariz. 319, 320, ¶ 2, 212 P.3d 11, 12 (App.2008).

victim's trial testimony, the State argued her statements to Detective Sutton were admissible as prior inconsistent statements and were not hearsay. The State identified the inconsistency as "she's told us that she doesn't want to talk about it, and I'm saying she knows about it but she's not willing to say. So I'm impeaching her with the" statements she made to Detective Sutton. Over Joe's objection, the State was allowed to ask the victim whether she had made specific statements to Detective Sutton on the night of the incident, and the victim consistently testified that she had made those statements. After the court allowed such questioning, the victim answered a number of similar questions without reference to her prior statements to Detective Sutton.

¶9 The jury found Joe guilty of kidnapping, aggravated assault and nine of the ten sexual assault charges. The court sentenced Joe to lengthy prison terms with appropriate credit for presentence incarceration time. This court has jurisdiction over Joe's timely appeal from the convictions and sentences pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 13–4031 and 13–4033(A)(1) (2013).[2]

## DISCUSSION

¶10 Joe argues the superior court erred in admitting the victim's prior statements to Detective Sutton, arguing the victim's trial testimony was not inconsistent with those prior statements as required by Arizona Rule of Evidence 801(d)(1)(A). This court reviews the superior court's decision admitting this evidence for an abuse of discretion. *State v. Robinson*, 165 Ariz. 51, 56, 796 P.2d 853, 858 (1990).

¶11 The Arizona Rules of Evidence contemplate using prior statements of a witness in a criminal trial in a variety of different ways, including:

- Prior statements, writings or other information used to refresh the recollection of a witness. *See* Ariz. R. Evid. 612 (addressing disclosure obligations for "when

a witness uses a writing to refresh memory"); *State v. Ortega*, 220 Ariz. 320, 329–30, ¶30, 206 P.3d 769, 778–79 (App. 2008) (witness allowed to review prior interview to refresh memory).

- Prior statements that qualify as recorded recollections. *See* Ariz. R. Evid. 803(5) (noting that, when admissible, the statement "may be read into evidence but may be received as an exhibit only if offered by an adverse party"); *Goy v. Jones*, 205 Ariz. 421, 72 P.3d 351 (App. 2003) (discussing rule).

- Prior statements (even if not under oath) of a witness where that witness testifies at trial and is subject to cross-examination, if the prior statement (a) is inconsistent with the testimony of the witness, (b) is consistent with the testimony but offered to rebut a recent fabrication claim or (c) involves a prior identification of a person. *See* Ariz. R. Evid. 801(d)(1)(A)-(C); *see also* Ariz. R. Evid. 613 (addressing procedural obligations and admission of extrinsic evidence of prior statements).

Although the parties discussed various bases for admitting or excluding the evidence at issue here, it is one subpart of the last of these—a declarant witness' prior inconsistent statement—that is the subject of this appeal.

¶12 A prior statement by a witness is not hearsay and may be admissible if "[t]he declarant testifies and is subject to cross-examination about [the] prior statement, and the statement . . . is inconsistent with the declarant's testimony." Ariz. R. Evid. 801(d)(1)(A); *see also* Ariz. R. Evid. 613(b) (providing for admission of extrinsic evidence of prior inconsistent statement); Ariz. R.Crim. P. 19.3(b) ("No prior statement of a witness may be admitted for the purpose of impeachment unless it varies materially from the witness' testimony at trial."). The requirement of an inconsistency is important to "bar[ ] any general and indiscriminate use of previously prepared statements." Fed. R.Evid. 801 Advisory Committee Notes 1972

2. Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

Proposed Rules Note to Subdivision (d). The purpose of this "broad exception to the hearsay rule" is

> that the jury should be allowed to hear the conflicting statements and decide "which story represents the truth in the light of all the facts, such as the demeanor of the witness, the matter brought out on [the witness'] direct and cross-examination, and the testimony of others." The trier of fact's role is to impartially consider the prior statement and evaluate its truth. When the witnesses are present and subject to cross-examination, admission of the statement as substantive evidence does not generally pose the risks often presented by hearsay evidence.

*State v. Miller,* 187 Ariz. 254, 257, 928 P.2d 678, 681 (App.1996) (citations omitted); *see also State v. Carr,* 154 Ariz. 468, 471, 743 P.2d 1386, 1389 (1987) ("Ariz. R. Evid. 801(d)(1)(A) is a broad exception to the hearsay rule. It is based upon a belief that a jury ordinarily should be permitted to consider a prior inconsistent statement in determining credibility.") (dicta). "The rationale is that because the witness is present and available for cross-examination, both about the present testimony and the past statement, the hearsay dangers are largely eliminated." Joseph M. Livermore, Robert Bartels & Anne Holt Hameroff, *Arizona Practice Law of Evidence* § 801.4 at 315 (4th ed.2000).

¶ 13 The only dispute on appeal is whether the victim's prior statements to Detective Sutton about the assault were inconsistent with her trial testimony in which she responded to questions about the same events that she "would rather not say" what happened.[3] The parties have not cited, and this court has not found, any case addressing this precise issue. Several Arizona cases, however, have addressed an analogous situation where a witness claims an inability to recall.

■■■ ¶ 14 "For purposes of Rule 801(d)(1)(A), Arizona law draws a distinction between a true and a feigned loss of recall. Where the asserted loss is genuine, the prior statement is deemed not inconsistent under this rule, but if the loss is mere fakery, the statement falls within the rule." *State v. Anaya,* 165 Ariz. 535, 538, 799 P.2d 876, 879 (App.1990) (dicta). Accordingly, a "claimed inability to recall, when disbelieved by the trial judge, may be viewed as inconsistent with previous statements." *State v. Hausner,* 230 Ariz. 60, 76, ¶ 58, 280 P.3d 604, 620 (2012) (quoting *State v. King,* 180 Ariz. 268, 275, 883 P.2d 1024, 1031 (1994)). In *King,* a reluctant witness repeatedly testified he was unable to remember certain events and the superior court found the witness was "feigning his memory loss," making his prior statements admissible under Arizona Rule of Evidence 801(d)(1)(A). 180 Ariz. at 275 & n. 3, 883 P.2d at 1031 & n. 3. In this case, as Joe correctly acknowledges, "[f]requently, the [victim] testified that she could not remember. However, upon further questioning from the state the [victim] admitted that it wasn't a memory problem; she simply did not want to talk about it." Unlike *King,* the victim in this case admitted under oath that her reason for not answering certain questions about the assault was because she "would rather not say," not because of any genuine or feigned memory loss. Indeed, the victim admitted under oath that she had no true memory loss, obviating the need for any consideration of a feigned memory loss as in *King,* 180 Ariz. at 275, 883 P.2d at 1031.

■■■ ¶ 15 Joe argues the victim "never gave testimony that was inconsistent with her prior statements. It cannot be claimed that the [victim] could not recall the events

---

**3.** On appeal, Joe correctly has not pressed the Confrontation Clause issue raised with the superior court. *See also Crawford v. Washington,* 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ("[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his [or her] prior testimonial statements.... The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."). In addition, although evidence admissible pursuant to Arizona Rule of Evidence 801(d)(1)(A) is subject to scrutiny under Arizona Rule of Evidence 403, Joe did not object to the victim's prior statements on that ground. *See State v. Allred,* 134 Ariz. 274, 277, 655 P.2d 1326, 1329 (1982) (setting forth factors to consider in addressing Rule 403 objection to prior inconsistent statements).

because when questioned by the state she did not claim she could not remember only that she did not want to talk about it." Contrary to Joe's argument, " '[a] statement's inconsistency ... is not limited to cases in which diametrically opposite assertions have been made.' " *King*, 180 Ariz. at 275, 883 P.2d at 1031 (quoting *United States v. Rogers*, 549 F.2d 490, 496 (8th Cir.1976)); *see also* 23 C.J.S. *Criminal Law* § 1167 (2013) (noting "inconsistency may be found in evasive answers, silence, changes in positions, or a purported change in memory") (citing cases). "[I]nconsistency is to be determined, not by individual words or phrases alone, but by the whole impression or effect of what has been said or done." *State v. Hines*, 130 Ariz. 68, 71, 633 P.2d 1384, 1387 (1981). The superior court "has considerable discretion in determining whether a witness's evasive answers or lack of recollection may be considered inconsistent with that witness's prior out-of-court statements." *State v. Salazar*, 216 Ariz. 316, 319, ¶ 15, 166 P.3d 107, 110 (App. 2007).

¶ 16 As applied to these facts, the victim repeatedly sought to avoid answering specific questions regarding the assault, stating (after follow up) that she "would rather not say." Those responses differed from, and were inconsistent with, her detailed description provided to Detective Sutton on the night of the assault. In light of her testimony and prior statements to Detective Sutton, the superior court did not abuse its discretion in allowing the State to impeach the victim with her prior inconsistent statements to Detective Sutton pursuant to Arizona Rule of Evidence 801(d)(1)(A).

## CONCLUSION

¶ 17 Finding no abuse of discretion in admitting evidence of the victim's prior inconsistent statements, Joe's convictions and sentences are affirmed.