NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JEFFERY CRAIG RHONE, II, *Appellant*.

No. 1 CA-CR 24-0650

FILED 01-13-2026

Appeal from the Superior Court in Maricopa County
No. CR2019-112450-001
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christine A. Davis
*Counsel for Appellee*

Brown & Little PLC, Chandler
By Matthew O. Brown
*Counsel for Appellant*

<hr>

**MEMORANDUM DECISION**

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Veronika Fabian joined.

<hr>

**F O S T E R**, Judge:

¶1          Defendant Jeffery Craig Rhone, II appeals his convictions and sentences for two counts of second-degree murder, one count of first-degree burglary, four counts of aggravated assault with a deadly weapon, one count of endangerment and one count of tampering with physical evidence. Rhone argues the court erred in permitting the State to impeach a victim's testimony through its detective. This Court affirms.

## FACTS AND PROCEDURAL HISTORY[1]

¶2          In the early afternoon of March 19, 2019, Rhone, the victim Brian[2], and several of Brian's family members and friends were at Brian's home. While the group gathered, Rhone accused Brian's brother of stealing his wallet. A short physical altercation occurred and ended with Rhone leaving the residence. Rhone returned about two hours later and another fight ensued, this time with Brian. Family members broke up the fight and Rhone left again.

¶3          Rhone returned to the home for the third time and knocked on the door. When the door opened, Rhone entered and revealed a gun, which he waved around in an agitated fashion. Those in the home attempted to de-escalate the situation but Rhone began shooting. Rhone shot Brian and four other victims before fleeing. Two victims died from their injuries.

¶4          The State charged Rhone with twelve counts: two counts of first-degree murder, class 1 dangerous felonies; one count of first-degree burglary, a class 2 dangerous felony; four counts of aggravated assault with

<hr>

[1] This Court "view[s] the evidence in the light most favorable to sustaining the jury's verdict and resolve[s] all reasonable inferences against the defendant." *State v. Fierro*, 254 Ariz. 35, 38, ¶ 2 (2022).

[2] This Court uses pseudonyms to protect the identity of victims and witnesses. *See, e.g., State v. Agueda*, 253 Ariz. 388, 389, ¶ 2 n.1 (2022).

a deadly weapon, class 3 dangerous felonies; two counts of disorderly conduct, class 6 dangerous felonies; one count of disorderly conduct, a class 1 misdemeanor; one count of endangerment, a class 6 dangerous felony; and one count of tampering with physical evidence, a class 6 felony. Before trial, the State dismissed the misdemeanor count of disorderly conduct.

¶5 In preparation for trial, the State sought to have Brian testify. After the incident, Brian began serving time for a crime unrelated to Rhone's charges. To secure Brian's attendance at trial, the State filed a motion with the court. The court granted the State's motion and ordered Brian's appearance at trial by force, if necessary. Brian attended as ordered. At trial, the State asked Brian if he knew the consequences for testifying in court as an inmate. Brian replied: "Plead the Fifth." After answering some questions regarding his transportation to court, Brian stated he was "not here by choice" and he "was forced here." The State continued with direct examination and the following exchange occurred:

> Q: Okay. Now, I want to talk to you about events on March 19th of 2019, okay, that happened at your house. When you were at the house that night, were you with your dad and your brothers?
>
> A: I don't recall nothing from that night.

The State then sought a break. After dismissal of the jury, counsel for the State asked Brian if he would continue testifying that he had no memory of the incident. Brian stated he would.

¶6 After the jury returned, the State resumed its questioning. In response, Brian confirmed his father's name, affirmed he had two brothers, one of which was now deceased from the incident and identified Rhone as the defendant. Brian also admitted he used drugs the night of the incident. When the State asked Brian whether he sustained a gunshot wound in the neck during the incident, Brian stated:

> A: I don't want to answer no more further questions.
>
> Q: Okay. Do you recall doing an interview with a detective after [the shooting]?
>
> A: No, ma'am.
>
> Q: Okay. And do you recall talking to the detective and telling the detective what happened?

A: No, ma'am.

After the State finished direct examination, Rhone's counsel declined to cross-examine him.

**¶7** The State later called a detective who worked on the case to testify. The detective testified that he interviewed Brian after the incident and Brian provided details about the incident as part of that interview. The detective also testified that during the interview Brian did not disclose he used drugs on the day of the incident. The State then asked the detective what Brian told him "had been going on in the house earlier that evening?" Rhone's counsel objected on grounds of hearsay due to improper impeachment.

**¶8** After the objection, the parties discussed whether the State properly laid the foundation to impeach Brian through the detective's testimony. Following discussion, the court found the detective's testimony about Brian's prior statements was admissible as prior statements for impeachment. The court overruled Rhone's objection and determined that Brian feigned memory loss as to the incident. Trial continued and after the State's direct examination, Rhone's counsel cross-examined the detective.

**¶9** After the close of the State's case, Rhone's counsel moved for judgment of acquittal on the two counts of aggravated assault with a deadly weapon, two counts of disorderly conduct (the counts designated as class 6 dangerous felonies) and the one count of endangerment. The court granted the motion as to the two counts of disorderly conduct, but it denied Rhone's request as to the remaining counts.

**¶10** The court submitted the case to the jury. The jury failed to find Rhone guilty of first-degree murder but found him guilty of the lesser offense of second-degree murder on both murder counts. The jury also found Rhone guilty of the remaining counts as charged. The court sentenced Rhone to consecutive 20-year terms of imprisonment on the second-degree murder counts, with additional concurrent sentences for the remaining convictions. It credited Rhone with 1,964 days of presentence incarceration credit.

**¶11** Rhone timely appealed and this Court has jurisdiction under the Arizona Constitution article VI, section 9 and A.R.S. §§ 12-120.21(A)(1), 13-4031 and -4033(A).

## DISCUSSION

**¶12**     Rhone's sole argument on appeal challenges the State's impeachment of Brian's statements through the detective. This Court reviews the superior court's admission of evidence for an abuse of discretion. *State v. King*, 180 Ariz. 268, 275 (1994). Because Rhone objected to the court's admission of the detective's hearsay and impeachment testimony at trial, this Court considers the superior court's ruling under a harmless error standard. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). Harmless error review requires the State to prove "beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *Id.*

**¶13**     Rhone claims the court erred because the State failed to: (1) refresh Brian's recollection, (2) indicate it would seek to impeach Brian with his prior statements and (3) disclose that it would be attempting to impeach Brian via the detective's testimony. The State counters that because Rhone's appeal does not challenge the court's determination that Brian feigned his memory loss, Rhone concedes the court properly allowed the detective's testimony.

**¶14**     Arizona Rule of Evidence ("Rule") 613(b)[3] permits the admission of a prior inconsistent statement (1) "only if the witness is given an opportunity to explain or deny the statement" and (2) "an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Ariz. R. Evid. 613(b) (2012). But when a witness asserts a loss of memory and the court believes the witness is faking or feigning the memory loss, the prior inconsistent statement may be admitted in the discretion of the trial court. *King*, 180 Ariz. at 275 (court properly admitted an inconsistent statement when witness continually testified his inability to remember facts but the record supported the witness's feigned memory); *State v. Joe*, 234 Ariz. 26, 29, ¶ 14 (App. 2014) (citations omitted); Ariz. R. Evid. 801(d)(1)(A).

**¶15**     Here, the court concluded that Brian feigned memory loss of the events that occurred on March 19. The following facts support the court's conclusion: Brian (1) pled the Fifth when asked about the consequences of inmates testifying, (2) claimed he was forced to be at trial, (3) said he did not recall anything from the night of the incident and claimed no memory of it, (4) stated his response for everything that happened that

---

[3] Arizona Rule of Evidence 613(b) was amended in 2024 with an effective date of January 1, 2025. Because trial occurred before the amendment, this Court applies the version that was effective before that date.

night would be he did not remember and (5) informed the prosecutor he did not want to answer any further questions.

**¶16** Rhone did not challenge the court's finding that Brian feigned memory at trial. Instead, Rhone only objected to the admission of the detective's testimony about Brian's prior statements on the grounds of improper impeachment and hearsay. The court overruled the objection citing Rule 801 and 613. Following this ruling, Rhone's counsel sought clarification on whether the court would limit the scope of the detective's testimony. The court declined to limit the testimony, explained that it would hear objections as they came up and would rule accordingly based on the circumstances. After that ruling, Rhone's counsel objected three times during the detective's testimony citing hearsay. Twice, the court sustained Rhone's objection for hearsay when the questions elicited statements made to Brian from another person that Brian then relayed to the detective (double hearsay). The third objection involved hearsay statements that related to Brian's feigned memory and the court overruled that objection.

**¶17** By failing to object to the court's feigned memory determination, Rhone waives any argument that the court erred in allowing the detective to testify about Brian's prior statements under 801(d)(1)(A). *See State v. Nirschel*, 155 Ariz. 206, 208 (1987) (failure to argue a claim constitutes waiver). Rhone's appeal is limited to the State's use of extrinsic evidence. *See id.*

**¶18** Applying *King* to these facts, impeachment by extrinsic evidence via the detective's testimony was permissible under Rule 613(b). *See Joe*, 234 Ariz. at 30, ¶ 16 (admission of prior inconsistent statement was proper to impeach witness who declined to answer questions at trial); *see also State v. Robinson*, 165 Ariz. 51, 58–59 (1990) (the State may impeach its own witness). Though Rhone objected on hearsay grounds, the court properly denied the objection based on its determination that Brian had feigned memory loss.

**¶19** But even viewing the court's admission of the detective's hearsay testimony as error, any error was harmless. *State v. Anthony*, 218 Ariz. 439, 446, ¶ 41 (2008) ("find[ing] error harmless when the evidence against a defendant is so overwhelming that any reasonable jury could only have reached one conclusion"). The record shows the State presented overwhelming evidence to support the jury's verdict. Another witness and victim, Jacob, provided similar testimony to that introduced by the detective's testimony. Jacob identified Rhone at trial, testified about the

altercations leading up to the incident, explained Rhone potentially sustained a busted nose or lip from the altercations, described how he and the four other victims were shot and stated that he and the others were using drugs that night. Jacob testified that Rhone shot the two deceased victims who received injuries to the head and torso respectively. The medical examiner confirmed the injuries and cause of death. The State also entered seven bullet casings and five bullets recovered from the scene into evidence, all of which came from the same type of firearm. And a case agent, who responded the night of the incident, identified Rhone and confirmed that pictures he presented to the jury were from the home where the incident occurred. Finally, another detective testified that a gun residue test found residue on Rhone's hands. Even absent the detective's testimony regarding Brian's statements, Jacob's testimony and other evidence overwhelmingly supports the jury's verdict. *See State v. Moody*, 208 Ariz. 424, 457, ¶ 132 (2004) (an error is harmless when the error could not affect the jury's verdict). Therefore, any error was harmless.

## CONCLUSION

¶20 This Court affirms.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR